[No. 5982.   Decided April 6, 1906.]

THE STATE OF WASHINGTON, *on the Relation of John L. Thomas et al., Plaintiff*, v. THE SUPERIOR COURT FOR WHATCOM COUNTY *et al., Respondents*.[1]

EMINENT DOMAIN—PUBLIC USE—STREETS—LAND OWNED BY CITY— ESTOPPEL. It cannot be claimed that the taking of land by a city for the extension of a public street is not a public use because of the fact that the city already owns certain land necessary to complete the extension, and which has not been formally dedicated and is not mentioned in the proceedings; since the city would be estopped to claim that its land necessary therefor was not to be used or dedicated.

SAME—CUL DE SAC AS STREET—COURTS—LEGISLATIVE FUNCTION. The establishment by the city authorities of a *cul de sac* as a public thoroughfare, is a legislative function with which the courts will not interfere.

SAME—PUBLIC USE. The use of property for a public street is necessarily a public use.

SAME—PAYMENT OF DAMAGES—MUNICIPAL INDEBTEDNESS—LIA· BILITY OF CITY. Upon a proceeding by a city to condemn lands for a public street, the same to be paid by assessment upon property specially benefited, if sufficient can be rasied in that way, any inquiry as to the amount of the city indebtedness is immaterial; especially where the city has taken a penal bond from interested owners, conditioned that the city will not be called upon to pay any portion of the expense.

[1]Reported in 85 Pac. 256.

SAME—PROCESS—PERSONAL SERVICE OUTSIDE OF STATE. In pro-
ceedings to condemn land for a public street, personal service on a
nonresident defendant outside of the state, in lieu of service by pub-
lication, is authorized by Laws 1905, p. 86, providing for service as
in civil actions, and Bal. Code, § 4879, providing that personal serv-
ice outside the state shall be equivalent to service by publication.

SAME—PROOF OF SERVICE. Proof of service of a summons upon
the defendants is sufficient where there were two affidavits, one of
which showed a service on both defendants, the second affidavit
showing that the party making the service was qualified.

Certiorari to review a judgment of the superior court for
Whatcom county, Neterer, J., entered November 14, 1905,
adjudging a public use and ordering an assessment of dam-
ages for lands taken for the purpose of a public street. Af-
firmed.

*Kindall & Kenyon* and *Dorr & Hadley,* for petitioners.
*Fairchild & Bruce,* for respondents.

CROW, J.—This is a certiorari proceeding, instituted for
the purpose of having this court review the orders of the su-
perior court of Whatcom county, in an action for the con-
demnation of private property.

On April 10, 1905, the council of the city of Bellingham
passed ordinance No. 139, entitled:

"An ordinance providing for the laying off, widening and
establishing of Prospect street, a public street and highway
in the city of Bellingham, over and across portions of blocks
11, 12, 14 and 19, Central Whatcom; providing for the lay-
ing out, extending and establishing said Prospect street
through block 7, New Whatcom, and providing for the taking
and damaging of land and other property necessary therefor
and for the ascertainment and payment of just compensation
to be made for the private property to be taken and damaged
for said purposes and for the assessment upon the property
benefited for the purpose of making such compensations."

Afterwards the city attorney, under authority of said ordi-
nance, filed a petition in the superior court of Whatcom
county, as required by § 3 of chapter 55, Laws 1905, page 86,

praying that just compensation be made for private property
to be taken or damaged for the laying off, widening, extend-
ing and establishing of Prospect street as provided by said
ordinance, and that a jury be impaneled for that purpose.
Prospect street, as at present dedicated and opened, extends
from the northern portion of the city of Bellingham in a
southerly direction to Champion street, where it terminates
near the center of the north line of block 7 hereinafter men-
tioned. Immediately south of Champion street, and abutting
thereon, is block 7, of the city of New Whatcom, now a part
of Bellingham. This block, triangular in form, and subdi-
vided into lots, is bounded on the north by Champion street
running east and west, on its southeasterly side by Bay street
running from northeast to southwest, and on its southwesterly
side by Holly street running from northwest to southeast.
Bay and Holly streets intersect each other at the south angle
of block 7, and respectively intersect Champion street at the
east and west angles of said block 7. The city buildings and
central fire station are located on Prospect street about one
block north of Champion street. Block 7 lies between the
end of Prospect street and the business center of the city,
to which at present the most direct route of travel is around
Champion and Bay streets. The city wishes not only to
widen Prospect street, but also to extend it across said tri-
angular block 7 to Bay street, thus making a wider and more
direct thoroughfare to the business center. The city now
owns the southwest thirty feet of lot 11 in block 7, directly in
the line of the proposed extension of Prospect street. Ordi-
nance 139 does not provide for any condemnation of said
thirty feet, nor has any formal record of its dedication been
made. If the street when extended is not opened through said
thirty feet, one *cul de sac* will be formed in the north side
and another in the south side of block 7, with said thirty
feet lying between them. The relators own that portion of
block 7 sought to be condemned south of the thirty feet owned
by the city. The superior court made findings of fact and

conclusions of law in favor of the city, and ordered a jury to be impaneled to fix values and assess damages.

The relators' first contention is that the proposed appropriation of their lands is not a public use. They insist that neither the ordinance nor the condemnation proceedings attempt to appropriate said southwest thirty feet of lot 7, and cannot be regarded as proceedings for that purpose; that no dedication of said thirty feet has been made; that the city is only endeavoring to create one *cul de sac* next to Champion street and another next to Bay street, and that any appropriation for such a purpose cannot be a public use. We think these contentions are entirely without merit. The record shows a sincere intention upon the part of the city to actually open Prospect street entirely across block 7, and to condemn all *private* property that may be necessary for that purpose. The southwest thirty feet of lot 11, however, is not private, but public property. If it belonged to the county or state, it might perhaps be necessary to condemn it; but as it belongs to the city, its condemnation is unnecessary. Although no record of any formal dedication of said thirty feet has been made for street purposes, yet if the city proceeds with the proposed improvement and pays the relators all damages that may be awarded them, we think that, in the light of the ordinance, the condemnation petition, the evidence, and the entire record before us, it will be estopped from claiming that its own property has not been dedicated. 13 Cyc., 453, 454.

But, suppose it be admitted, as contended by the relators, that the city is only creating a *cul de sac,* yet it would have authority to establish a thoroughfare in the form of a *cul de sac* on either side of its property, if it saw fit to do so. It would be a legislative function, with the exercise of which the courts could not interfere, for the city to determine that such additional access to its property was a public necessity. *Sheafe v. People ex rel. Olwell,* 87 Ill. 189, 29 Am. Rep. 49; *People ex rel. Williams v. Kingman,* 24 N. Y. 599. But we

think the city is not creating any *cul de sac*. The evidence shows beyond question that it is about to open a much-needed thoroughfare across block 7. There is no merit in the relators' contention that the use to be made of their lands sought to be appropriated is not public. The use of property for a street or highway is necessarily public, and the trial court could not find otherwise.

"One of the oldest and commonest of uses for which private property has been appropriated is the establishment of public highways. The apprporiation of private property for the establishment of such highways has been held uniformly to be for a public use." 10 Am. & Eng. Ency. Law (2d ed.), 1072.

See, also, *State ex rel. Schroeder v. Superior Court,* 29 Wash. 1, 69 Pac. 366; *Chicago etc. R. Co. v. Town of Lake,* 71 Ill. 333.

Upon the hearing the trial court excluded evidence offered by the relators for the purpose of showing that the city of Bellingham at the time of the institution of the condemnation proceedings, and at the time of the hearing was indebted in excess of the constitutional limit, and they now assign error upon said ruling. The ordinance in § 4 provides that an assessment shall be made in the manner provided by the act of the legislature for the purpose of raising the amount necessary to pay the compensation and damages which shall be awarded for the property taken, and for the costs and proceedings, and that such assessment shall be made subject to the provisions of said act of the legislature upon all the property, especially benefited. The ordinance in a later section provides that "any part of the compensation, damages or costs that is not finally assessed against said property benefited shall be paid from the general fund of the city." The relators contend that by this last provision the city will necessarily incur an invalid indebtedness, having already exceeded its constitutional limitation. Any inquiry into the amount of the city debt is immaterial in this proceeding. The prop-

erty of the relators cannot be taken by the city until actual compensation has been made. The relators are in no position to raise any question as to the limit of the municipal debt, nor are they justified in assuming that any unconstitutional indebtedness will be incurred. It is apparent from the entire ordinance that an intention exists on the part of the city to pay for property taken by special assessments made upon property benefited, and such intention brings this case within the rule laid down in *Winston v. Spokane*, 12 Wash. 524, 41 Pac. 888, and *Faulkner v. Seattle*, 19 Wash. 320, 53 Pac. 365. To meet any suggestion that the city's credit may be menaced by this proceeding, the council have not only provided in the ordinance for special assessments to pay for the lands to be taken, but the evidence shows they have also taken a penal bond from interested property owners conditioned that the city shall not be called upon to contribute any funds to the expense of the improvement. In *Faulkner v. Seattle, supra,* this court said:

"It is also urged that as the fund is not now in existence and as the city is proposing to acquire rights of way and property rights prior to the creation of the fund, this would be a violation of the provision with reference to its debt limit, but that does not follow necessarily. There may be some method for immediate payment provided for property condemned, or an agreement possibly postponing and limiting payment to the fund contemplated under the contract for the construction of the works. If the city should wrongfully attempt to make payment for rights of way out of its general fund, the parties holding claims against that fund possibly could interfere, but it is not apparent that there is any intention to deplete this fund."

The taking of the bond discloses that the city authorities have already adopted "some method for immediate payment for property condemned." The trial court committed no error in rejecting the evidence offered.

It appears that relators, George A. Green and Annah S. Green, his wife, being nonresidents of the state of Washing-

ton, were first served by publication, and afterwards by personal service without the state. They only made a special appearance, moving the court to quash such service. This motion being denied, they now assign error, and claim that the service by publication was insufficient for the want of a proper affidavit. This may be conceded for the purposes of this case. As to the personal service outside of this state, they claim, (1) that no authority exists for any such service in a proceeding of this character, and (2) that if such authority does exist, a valid personal service outside of the state has not been made. There is no merit in either of these contentions. Section 5 of the act of 1905, at page 86, provides that "upon the filing of the petition aforesaid, a summons returnable as summons in other civil actions, shall be issued and served upon the persons made parties defendant, together with a copy of the petition as in other civil actions." The code of civil procedure, Bal. Code, § 4879, authorizes personal service on a defendant out of the state, and provides that the same shall be equivalent to service by publication. We think these two sections authorize personal service on a defendant out of the state in this proceeding. Relators also object to the proof of service, because it does not show a copy of the petition and summons to have been served upon each of the relators, Green and wife. There are two affidavits making proof of service. In the first, it affirmatively appears that copies of the petition and summons were left with each of said relators. The second affidavit was made to show that the party who made the service was qualified. These two affidavits are sufficient proof of a valid service, none of their statements being denied by the relators. *Jennings v. Rocky Bar Gold Min. Co.,* 29 Wash. 726, 70 Pac. 136; *Hunter v. Wenatchee Land Co.,* 36 Wash. 541, 79 Pac. 40.

The judgment of the superior court is affirmed.

MOUNT, C. J., ROOT, HADLEY, FULLERTON, and DUNBAR, JJ., concur.