CITY OF LAREDO v. FRISHMUTH et al.
(No. 5867.)

(Court of Civil Appeals of Texas. San Antonio. May 23, 1917. Rehearing Denied June 13, 1917.)

1. MUNICIPAL CORPORATIONS ⬤�top957(3)—TAXES—VALIDITY.

That portion of Laredo city ordinance of December 22, 1883, levying a tax of 45 cents per $100 violates the constitutional amendment of 1883 (see Acts 18th Leg. p. 133) limiting such taxation to 25 cents per $100.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 2018, 2019.]

2. MUNICIPAL CORPORATIONS ⬤�top116—ORDINANCES—REPEAL.

Laredo city ordinance of May 19, 1883, providing for payment of bonds by revenue derived from taxation, sale of lots, etc., was not repealed by the unconstitutional ordinance of December 22, 1883, providing that entire amount be raised by a tax levy of 45 cents per $100 in violation of a constitutional amendment limiting such levies to 25 cents per $100.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 268–271.]

3. STATUTES ⬤�top164—AMENDMENT.

Where a statutory article consists of several subdivisions. dealing with the same matter, one or more of such subdivisions may be amended without interfering with other parts of the article.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. § 239.]

4. MUNICIPAL CORPORATIONS ⬤�top111(4)—ORDINANCES—PARTIAL INVALIDITY.

Laredo city ordinance of December 22, 1883, is entirely void, since the provision authorizing a tax levy of 45 cents per $100 in violation of the Constitution, limiting such levies to 25 cents per $100, is an inseparable part of the ordinance, all of whose provisions are connected in subject-matter.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 248–251.]

5. MUNICIPAL CORPORATIONS ⬤�top864(4) — INDEBTEDNESS—CONSTITUTIONAL PROVISION.

Where a municipal liability may be paid from cash on hand or a special fund, no debt is incurred within the Constitution, limiting the tax which may be levied to pay certain municipal debts, since the object of the amendment was merely to prevent exorbitant taxation.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1832.]

6. MUNICIPAL CORPORATIONS ⬤�top920—BONDS—MAYOR'S AUTHORITY.

A mayor authorized to issue municipal bonds was authorized to insert a recital that their issuance was pursuant to a specified ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1930, 1931.]

7. MUNICIPAL CORPORATIONS ⬤�top943(1) — BONA FIDE PURCHASERS OF BONDS—ESTOPPEL.

Where bona fide purchasers held municipal bonds reciting their issuance under a specified city ordinance recorded in a certain book, etc., the city is estopped from claiming that the bonds were issued under a subsequent ordinance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1972.]

⬤⟕For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**8. MUNICIPAL CORPORATIONS ☞1038—EXECUTION.**

Execution should not be awarded against a municipal corporation on a judgment secured by holders of municipal bonds.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2211.]

Appeal from District Court, Bexar County; J. F. Mullally, Judge.

Action by Willard Frishmuth and others against the City of Laredo. Judgment for plaintiffs, and defendant appeals. Affirmed as modified.

A. Winslow and Paul W. Evans, both of Laredo, for appellant. Harding & Goodwin and Mann & Henry, all of Laredo, for appellees.

FLY, C. J. This is a suit instituted by appellees to recover of appellant the sum of $21,000, alleged to be due on 21 bonds for $1,000 each issued by appellant on December 31, 1883, and bearing interest at the rate of 6 per cent. per annum, of which appellees alleged they were innocent purchasers for value before maturity. It was further alleged that the city of Laredo was granted a charter in 1756 by the King of Spain, and that he granted to said city four leagues of land lying partly on the north side of the Rio Grande; that the portion of the land in Texas contained 10,700 acres, the grant of which was afterwards confirmed by the state of Texas; that a large portion of the 10,700 acres of land has been divided by appellant into lots and blocks, out of which lots have been sold to numerous persons, but that in May, 1883, it owned, and still owns, a large portion of the lands granted to it, which were of the value of $1,000,000; that since 1883 appellant has sold and received pay for many lots, realizing the sum of $750,000 therefrom; and that when this suit was instituted appellant still had lands of the value of $125,000. It was further alleged that on May 19, 1883, appellant was duly incorporated under the laws of Texas, and on that date its city council by ordinance provided for the issuance of bonds in the sum of $75,000 by virtue of a vote of the people, of which $40,000 were for the erection of a city hall and market house, $20,000 for street improvements, $10,000 for schoolhouses, and $5,000 for a city hospital; that provision was made in said ordinance for the payment of the bonds and interest by levying a tax of one-tenth of 1 per cent. on the $100 valuation of the property in said city, and by setting apart the money arising from the sale of lots and blocks of land owned by it, the rents arising from the city hall and market house to be erected, and the fines and forfeitures collected by the city, which sum was more than sufficient to pay the interest on said bonds and provide for a sinking fund. It was alleged that the bonds were issued on December 31, 1883, being made payable on July 1, 1913, to bearer, and each one reciting that it was issued by virtue of an ordinance passed by the city of Laredo on May 19, 1883, giving the book and page of the minutes of said city; that said bonds were registered by the comptroller of public accounts of the state of Texas, such fact being indorsed on each bond; that the bonds were sold in the market, and those involved in this suit were eventually purchased for a valuable consideration before maturity. It was further alleged that the tax provided for in the ordinance had been collected; that $750,000 had been collected from the sale of lots and $600 a month from the rent of the city hall and market, and large sums for fines and forfeitures since 1883; and that all of the bonds had been paid except 33.

It was answered by appellant that the bonds were issued under and by virtue of an ordinance of December 22, 1883, and not by virtue of the ordinance of May 19, 1883; that at the time of issuance the assessed valuation of property in Laredo was $1,345,951; that by the Constitution and laws in force on December 22, 1883, the city of Laredo could not issue bonds except on the basis of a tax of 25 cents on the $100 valuation, which would produce sufficient revenue to pay the interest as it accrued on the bonds and create a sinking fund sufficient to redeem such bonds at their maturity; that such revenue would only be sufficient to form the basis for the issuance of $36,180; and that the portion of the bonds issued in excess of that amount were invalid. Appellant admitted liability as to $36,180/75,000 of the amount of the 21 bonds.

The cause was heard by the court without a jury, and judgment rendered for appellees for the full sum claimed by them.

There is no statement of facts, and necessarily the findings of fact of the trial judge must be the conclusions of fact of this court. From those findings it appears that on May 19, 1883, an ordinance was passed by the city council of Laredo authorizing the issuance of bonds in the sum of $75,000, in denomination of $1,000, bearing 6 per cent. interest, and due and payable on July 1, 1913. It was provided that the bonds should be styled "city improvement bonds," $40,000 of them to be issued to erect a city hall and market house, $10,000 to build a schoolhouse, $20,000 to improve the streets, and $5,000 to build a hospital. It was further provided:

"Sec. 7. That for the purpose of securing the payment of the interest due on all 'city improvement bonds,' and to create a sinking fund of two per centum thereon, there is hereby specially appropriated and set apart all sums collected from assessments made on the property fronting on the streets so improved: Provided, that any excess over and above the sum required to pay the interest on said twenty thousand dollars and create said sinking fund shall be invested in interest bearing securities as required by law.

"Sec. 8. That there shall be and is hereby levied an annual direct ad valorem tax of one-tenth

of one per centum upon all property real and personal, in the city of Laredo, which tax shall be assessed and collected in the same manner and at the same time as other taxes, and there is hereby appropriated and set apart in addition thereto, so much of the following named revenues as may be necessary, viz.: All revenues arising from taxation; all revenues arising from the sale of lots and other lands; all revenues arising from fines and forfeitures imposed and collected by the city; all revenues arising from said city hall and market house and said funds hereby appropriated shall not be diverted nor drawn upon for any purpose, and the city treasurer shall honor no drafts on said funds until the interest and sinking fund is fully provided for."

In 1883 the taxable values of property in Laredo amounted to $1,345,951. The bonds were sent to the comptroller of public accounts for registration, and in the early part of 1884 were sold, appellant receiving par value for them. Each bond gave the number of bonds issued with their value, and each provided that:

"The payment of the principal and interest due on this bond is secured by a fund appropriated by the city council of Laredo on the 19th day of May, 1883, duly entered of record in the Book of Ordinances on pages 50, 51, 52, and 54, to which reference is made."

The bonds did not disclose the existence of an ordinance of December 22, 1883, which purported to be an amendment of the ordinance of May 19, 1883. The only marked differences between the last ordinance and first were that in section 5 the form of the bonds was not prescribed, and that sections 7 and 8 are omitted, and section 6, in lieu thereof, is as follows:

"Sec. 6. That for the purpose of securing the interest due on said bonds and to create a sinking fund of two per cent. to pay the principal thereof there shall be levied, assessed and collected an annual direct ad valorem tax of forty-five (45) cents on each one hundred (100) dollars, in value upon all property, real and personal in the city of Laredo, which tax shall be assessed and collected at the same time and in the same manner as other taxes and all moneys arising from said tax is hereby appropriated and set apart for the payment of the interest and principal of said bonds."

It was also provided in the last ordinance that $40,000 of the bonds should be used to build a city hall and city market, and $35,000 for street improvements. The taxes were levied, rents received, and fines and forfeitures from 1884 to present time were collected. Many lots were sold and purchase money collected, and the appellant still owns a number of blocks of land of the value of $30,000, and appellant has $6,000 in cash to the credit of the bond fund. On July 2, 1913, appellant sought to issue refunding bonds for the bonds of 1883 remaining unpaid, but the bonds were disapproved by the Attorney General of Texas, on the ground that the original issue of bonds in 1883 was invalid. Since 1883 appellant has received from rents from the market house and stands on the market plaza the sum of $165,744.75, from fines and forfeitures $19,946.22, and from the sale of land $28,981, amounting in the aggregate to the sum of $214,871.97. None of that sum has been paid on the bonds of 1883.

When the ordinance of May 19, 1883, was passed, there was a constitutional provision in effect that limited the amount of taxation by cities for the erection of public buildings to 50 cents on the $100 (Const. 1876, art. 8, § 9), but on September 25, 1883 (see Acts 18th Leg. p. 133), an amendment to the Constitution was adopted which limited the tax for public improvements to 25 cents on the $100 valuation of property for any one year. It is therefore the contention of appellant that the ordinance of May 19, 1883, was not in effect when the bonds were issued and put on the market, but had in effect been repealed by the ordinance of December 22, 1883, which omitted all reference to rents, purchase money of lots, and fines and forfeitures, and provided for taxation at the rate of 45 cents on the $100 of the property valuation of 1883.

The ordinance of December 22, 1883, purports to amend the ordinance of May 19, 1883, and there is nothing in it indicating that there was any intention or desire to repeal the former ordinance. The only reason for its passage that could plausibly be advanced was the desire to increase the rate of taxation and to make the whole of the $35,000 available for street improvements. No disposition was shown in the last ordinance to repeal the former ordinance or to in any manner interfere with any of its provisions except in the particulars mentioned.

[1, 2] The ordinance of December 22, 1883, was enacted after the constitutional amendment of 1883 had gone into effect, and clearly was in violation of its terms; for a rate of taxation largely in excess of the amount permitted by cities for public buildings, street, sewer, and other permanent improvements was provided for in the ordinance. Being invalid because unconstitutional, that clause, if it did not invalidate the whole ordinance, did not, directly or by implication, repeal that part of the ordinance relating to the raising of revenue to meet the interest and furnish a sinking fund for the payment of the bonds. That section of the last ordinance being invalid, the original ordinance would remain in full force, except so far as affected by those valid sections remaining in the last ordinance, if it was affected at all by it.

[3] Even in the case of a legislative act, where an article of the statutes consists of numbered sections or subdivisions, each section dealing with the same matter, one or more of such sections may be amended, without interfering with other parts of the act. Lewis' Sutherland, Stat. Const. §§ 236, 237, and cases cited in footnotes.

[4] We have discussed the last ordinance as though that portion in regard to taxation might be invalid, and yet the other provisions be valid, but we are of opinion that all the provisions are connected in subject-

matter, depend on each other, and were designed to operate for one and the same purpose, and, if not, that each provision is so dependent upon the other that it would be unreasonable to presume that one would have been passed without the other. The test is: Are the parts of the ordinance so essentially and inseparably connected with each other that they cannot be separated? And, if so, one part being void renders the whole void. Lewis' Sutherland, Stat. Const. §§ 296, 297, and authorities cited; Zwernemann v. Von Rosenberg, 76 Tex. 522, 13 S. W. 485; Kimbrough v. Barnett, 93 Tex. 301, 55 S. W. 120; Spence v. Fenchler (Sup.) 180 S. W. 597. In this case, if the provision for the taxes is eliminated, no valid reason can be given for the passage of the ordinance, and every part of the ordinance is necessary to its existence. It will not be contended that an invalid ordinance could amend or repeal another ordinance. Water Co. v. Cleburne, 1 Tex. Civ. App. 580, 21 S. W. 393.

The circumstances connected with the issuance of the bonds show that there was no intention to destroy or impair the ordinance of May 19, 1883, for when the bonds were afterwards issued no reference to the last ordinance was made in the bonds, but it was declared in each one of them that they were issued by virtue of the ordinance of May 19, 1883. The identical form of bond provided for in that ordinance was the one in which the bonds were sold.

It is not claimed that the ordinance of May 19, 1883, is invalid, the contention being that the bonds, in spite of their recital to the contrary, were issued under the ordinance of December 22, 1883, and that such ordinance was invalid so far as over half of the bonds were concerned. That position might be tenable had the ordinance only provided for 25 cents on the $100, but cannot be sustained as to an attempt to levy a tax of 45 cents a hundred directly in the face of the Constitution.

The ordinance of May 19, 1883, did not attempt to provide for the interest and sinking fund of a $75,000 issue of bonds by taxation, but recognized the inadequacy of a tax rate of 25 cents on the $100 to meet the interest and sinking fund and made other provisions out of other means to meet the demand. At the time it was enacted the city could have provided for a tax of 50 cents, but chose to secure the bonds in other ways which it had the right to do.

[5] It is the rule, well sustained by authority, that contracts may be made without incurring a debt within the meaning of the Constitution when the municipal corporation has cash in the treasury with which to meet the liabilities, or when the debt is made payable out of a special fund raised or to be raised. Galveston v. Heard, 54 Tex. 420; Dillon, Mun. Corp. §§ 197, 198; State v. Neosho, 203 Mo. 40, 101 S. W. 99. The fact that such special fund is not in existence at the time

196 S.W.—13

when the bonds were issued does not make expenditures incurred on the credit of the fund and only payable therefrom an indebtedness in the purview of the Constitution. State v. Whatcom County, 42 Wash. 521, 85 Pac. 256; McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322. As said in the last-named case:

"These constitutional provisions were intended as restraints upon the power of municipal corporations to contract that class of pecuniary liabilities not to be satisfied out of the current revenues or other funds within their control lawfully applicable thereto, and which would therefore at the date of the contract be an unprovided for liability and properly included within the * * * meaning of the word 'debt.' They have no application, however, to that class of pecuniary obligations in good faith intended to be and lawfully payable out of either the current revenues for the year of the contract or any other fund within the immediate control of the corporation."

The intent of the Constitution is to protect the citizenship of the municipality from exorbitant taxes, and that was attained in this case when only the constitutional tax was levied. The fund provided by the ordinance to come out of rents, fines, forfeitures, and sales of land was more than sufficient to pay the interest and create a sinking fund for $39,000 of the bonds, the amount unprovided for by taxation.

[6] Each of the bonds in question recited:

"The payment of the principal and interest of this bond is secured by a fund appropriated by the city council of Laredo on the 19th day of May, 1883, duly entered of record in Book of Ordinances on pages 50, 51, 52, and 54, to which reference is made."

An inspection of that ordinance showed the purchasers of the bonds that ample provision had been made for the payment of the bonds. The mayor will be deemed to have had the authority to make the recital in the bonds. It is sufficient if the duty, as in this instance, is placed upon a municipal officer to issue the bonds. Knox County v. Aspinwall, 62 U. S. (21 How.) 539, 16 L. Ed. 208; Dillon, Mun. Corp. § 927. The purchasers of the bonds were justified in acting upon the recitals in the bonds, and the city is bound by them.

In the case of Nolan County v. State, 83 Tex. 182, 17 S. W. 823, the Supreme Court said:

"If a purchaser were bound to inquire into the existence of the facts which empowered the court to issue bonds to build a courthouse, and to know that the county had no courthouse, in view of the recitals upon the face of the obligations, he was bound to look no further."

In the case of Ball, Hutchins & Co. v. Presidio County, 88 Tex. 60, 29 S. W. 1042, the court said:

"It results from what has been said above that 'the law requires' a dealer in county bonds to know the provisions of the act of the Legislature and the order of the county commissioners court under and by virtue of which such bonds were issued, whether referred to on the face of the bonds or not."

In the case of Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880, the court held that it was the duty of the purchaser of bonds to examine the orders under which the bonds were issued. The court said:

"Having failed to take the precaution to examine the order upon which the bonds were based, the purchaser was guilty of negligence, and must be charged with notice of that which could have been learned in the exercise of ordinary care."

In neither of the three cases last cited was there any recital as to a certain order by virtue of which the bonds were issued, except in the case of Nolan County v. State, and in that case it was held that the purchaser could rely upon the recitals.

[7] It may be that, if the ordinance under which the bonds were issued had not been definitely pointed out and identified by reference to the ordinance book of the city, the purchaser would have been charged with the duty of investigating the ordinances to ascertain the authority for issuance of the bonds, but in the case of the bonds involved herein the purchasers were lulled into security as to the ordinances by the representations that the bonds were issued by virtue of a certain ordinance found on certain pages of a certain book belonging to the city. The purchasers were authorized to act under the statement made in the bonds, and the city is estopped to deny the recital. It may have been entertaining, if not instructive, to have perused the ordinances and minutes of appellant, but it was not incumbent upon the purchasers of the bonds, under the circumstances to study such city records in order to unearth some ordinance framed prior or subsequent to the ordinance under which appellant represented that the bonds were issued. As said by the Supreme Court in City of Tyler v. Association, 99 Tex. 6, 86 S. W. 750:

"A purchaser of the bonds of a city must take notice of the requirements of our Constitution and the laws of the state, and must see that the city has complied with such requirements. As a city in this state cannot issue funding bonds except by an ordinance duly passed, * * * a purchaser of such bonds must look to the ordinance to see that it has been regularly passed, and that it confers authority for the issuance of the bonds offered for sale. But such purchaser is not charged with notice of other parts of the record not connected with the bonds offered for sale."

In support of the last proposition Mitchell County v. Bank, herein named, was cited, in which it was held that only the order under which the bonds were issued should be consulted. That case also held that a city would be estopped to deny recitals of the ordinance and the bonds, when the latter had come into the hands of innocent purchasers. County of Presidio v. Bank, 20 Tex. Civ. App. 511, 44 S. W. 1069; Peck v. City of Hempstead, 27 Tex. Civ. App. 80, 65 S. W. 653.

In the case of Evansville v. Dennett, 161 U. S. 434, 16 Sup. Ct. 613, 40 L. Ed. 760, the Supreme Court, we think, clearly states the law applicable to a case like this as to recitals:

"As therefore the recitals in the bonds import compliance with the city's charter, purchasers for value, having no notice of the nonperformance of the conditions precedent, were not bound to go behind the statute conferring the power to subscribe, and to ascertain, by an examination of the ordinances and records of the city council, whether those conditions had, in fact, been performed. With such recitals before them, they had the right to assume that the circumstances existed which authorized the city to exercise the authority given by the Legislature."

There are numerous authorities to the effect that recitals in bonds may, under certain circumstances, estop a municipality from defending against them on the ground of their invalidity. Dillon, Mun. Corp. §§ 923, 924, and authorities cited. The matter is thus summed up by Judge Dillon from the authorities discussed by him:

"The fact that a limitation of indebtedness or other requirement is contained in a Constitution does not of itself preclude the application of the doctrine of estoppel. Under proper recitals a municipality may be estopped from taking advantage of conditions precedent or constitutional limitations upon power as effectually as it can be from taking advantage of similar conditions or limitations contained in statutes. There is no difference in this respect between the organic and the statute law, unless possibly, in respect of the effect of the assessment roll which is prescribed in the Constitution itself as the test or measure of the debt limit powers of the municipality."

The proposition that purchasers of the bonds should have read the record of ordinances to ascertain whether the ordinance recited in the bonds had been altered or repealed cannot be entertained for a moment. Appellees had the right to rely on the assurances of the appellant that the bonds had been issued under a certain ordinance, and it cannot be heard to insist that they should have doubted the recitals of the bond and have made inquiry as to the repeal or alteration of the ordinance. The purchasers were under no obligation to go further than the ordinance referred to, and after the money has been obtained by the city and used for permanent improvements, occupied and employed by the city, it is, in equity and good conscience, estopped from setting up the plea that it had in a subsequent ordinance repealed or amended the ordinance which it had represented was in full force when the bonds were sold. The facts of this case bring it clearly within the rules of estoppel, and demand enforcement of them. The municipality having received full benefit from the bonds, and no principle of law or public policy being infringed by payment of the bonds, appellant should be compelled to pay the debt. Winston v. City of Ft. Worth, 47 S. W. 740.

The record indicates no desire upon the part of the city of Laredo to repudiate its obligations, or evade payment of its debts, but, on the other hand, it appears that it has sought to refund its indebtedness on the bonds, and even went so far as to seek a mandamus to compel the Attorney General

of Texas to approve such refunding bonds. The application for mandamus was refused by the Supreme Court on the ground that provision had been made for the payment of only about $36,000 of the original bonds, and that therefore only that part of the original bonds could be refunded. City of Laredo v. Looney (Sup.) 185 S. W. 556. That opinion from the standpoint of the Supreme Court, and with the facts before it, is doubtless correct, but we think that it is apparent that the Supreme Court was acting under the impression that the bonds were issued under the ordinance of December 22, 1883. One evidence of this is that it is stated that the bonds were issued "for street improvement, city hall and market house purposes," which is what the December ordinance shows, while the one of May 19, 1883, shows that they were issued for city hall and market house, street improvement, hospital, and schoolhouse purposes. Again it is stated that the bonds were issued under an ordinance passed at a time when the constitutional amendment was in force. The amendment was not in force in May, 1883, but went into effect on September 25, 1883. The provisions of the ordinance of May 19, 1883, were given no effect, and doubtless the court was not made cognizant of them; for it is held that the whole of the bonds was to be paid by taxation, which is not true under the first ordinance. Undoubtedly, as stated by Chief Justice Phillips: "The purpose of the constitutional provision is to prevent such taxation"—that is, for more than 25 cents on the $100 valuation of property. But when the ordinance of May 19, 1883, was passed there was no such provision, and, if there had been, the ordinance made ample provisions for the payment of principal and interest of the bonds issued thereunder.

The record in the Looney Case, in the Supreme Court, shows that the city of Laredo, in its application for mandamus, alleged that the bonds were issued under the ordinance of December 22, 1883, and no reference was made in the pleading to the ordinance of May 19, 1883. Of course, the question of estoppel was not raised in that case. In the Looney Case the brief of the city of Laredo raised but one question, and that was that, the city having voluntarily paid off 44 of the 75 bonds, the tax would pay the balance. No mention is made of the ordinance of May 19, 1883. In the briefs of the Attorney General it was assumed that the bonds were issued by virtue of the ordinance of December 22, 1883. The questions herein involved were not passed upon by the Supreme Court.

[8] Execution should not have been awarded against appellant, and doubtless that error in the judgment would have been corrected if it had been called to the attention of the court. This was not done, and the correction of the error by this court will not entail the imposition of costs of this appeal on appellees.

With the elimination of the provision for execution against appellant, the judgment will be affirmed.