## SOWELL et al. v. GRIFFITH.
### (No. 942—4739.)

Commission of Appeals of Texas, Section A. May 4, 1927.

1. **Municipal corporations** &#x29fa;861—**City adopting charter under Home Rule Amendment held authorized to purchase waterworks machinery (Rev. St. 1925, art. 1175, subd. 11).**

City, adopting charter under Home Rule Amendment of Constitution (article 11, § 5 [see Acts 1911, p. 284]), *held* authorized by Rev. St. 1925, art. 1175, subd. 11, to make contract purchasing and paying for waterworks machinery.

2. **Municipal corporations** &#x29fa;868(2)—**City's contract to pay for waterworks machinery from revenue derived from operation of waterworks held not "debt" within Constitution (Const. art. 11, § 5 [see Acts 1911, p. 284] and § 7).**

City's contract to pay for waterworks machinery from revenue derived from operation of waterworks, and not contemplating taxation or the issuance of warrants derived from taxation, in order to pay for the machinery, *held* not to violate the provisions of Const. 11, § 5 (see Acts 1911, p. 284), and section 7, limiting municipal indebtedness.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

**3. Municipal corporations ⊚�longdash⟩230—City board of water commissioners held authorized by charter to execute contract purchasing water-works machinery.**

City charter, providing that the board of water commissioners should take charge of, manage, operate, maintain, improve, extend, and enlarge the waterworks system *held* to authorize that board to execute contract purchasing waterworks machinery.

**4. Municipal corporations ⊚�longdash⟩228—City council held not authorized to execute contract for maintenance of waterworks system.**

Where city council was not in temporary control of the waterworks system under special circumstances mentioned in charter, it was not authorized to execute a contract for the maintenance of the waterworks system.

**5. Municipal corporations ⊚�longdash⟩230—Provisions of charter granting council control of waterworks held not to limit powers of board of water commissioners under normal circumstances.**

Where, under city charter, the management and control of the city waterworks was in the hands of the board of water commissioners, provisions specifying that under certain circumstances the city council was to have control of the waterworks system *held* not to limit the powers of the board of water commissioners under normal circumstances.

**6. Municipal corporations ⊚�longdash⟩230—Provision of charter that board of water commissioners might borrow money for operating plant held not to deny power to purchase machinery.**

Provision in city charter that board of water commissioners, which had the power of operating and maintaining the waterworks system, might borrow money for current expenses in operating the plant, *held* not to be construed as denial of the right to purchase machinery necessary for the maintenance of the system.

Error to Court of Civil Appeals of Tenth Supreme Judicial District.

Suit by W. H. Griffith against D. S. Sowell and others, composing the Board of Water Commissioners of the City of Cleburne, and A. M. Lockett & Co., Limited. To review a judgment of the Court of Civil Appeals (287 S. W. 673) reversing a judgment for defendants, defendants bring error. Reversed.

E. A. Rice, of Cleburne, and Lee, Lomax & Wren, of Fort Worth, for plaintiffs in error.

Goree, Odell & Allen, of Fort Worth, for defendant in error.

BISHOP, J. Statement of this case is as made by the Court of Civil Appeals, as follows:

"This suit was instituted by appellant, W. H. Griffith, a resident property tax payer of the city of Cleburne, against appellees D. S. Sowell and others, composing the board of water com-

missioners of said city, and A. M. Lockett & Co., Limited, a corporation, to restrain the execution and performance of a contract made on December 1, 1924, by said board of water commissioners with said A. M. Lockett & Co., Limited, for the purchase of certain waterworks machinery for the waterworks plant of said city. Said city of Cleburne, its mayor, and the members of its city council were made parties defendant, and are appellees herein. The contract sought to be enjoined, as originally entered into, provided for the purchase of said machinery for the sum of $49,788, payable as follows: $5,000 on January 5, 1925; $10,000 upon delivery of the machinery; and the balance in 14 notes, 13 of the same being for the sum of $2,500 each and one for $2,208, the first of which was to be due 30 days after the erection of the machinery, and one every 30 days thereafter until the last was paid. The parties to said contract estimated at the time that it would take at least five months to manufacture, ship, and install said machinery, which would have made the first note mature not earlier than July 1, 1925, and the last one August 1, 1926, making the last 8 of said notes, aggregating $19,888, mature more than one year after the final execution of the contract. In addition to the contract price of the machinery, the board of water commissioners were to pay freight charges and cost of installation, estimated at the aggregate sum of $6,000. Said contract provided that all indebtedness arising thereunder, whether evidenced by notes or not, should be payable at New Orleans, and that deferred payments should bear interest at 6 per cent. per annum from date of shipment, and should be a first lien on said property until said debt was paid. Said contract further provided that said Lockett & Co. did not relinquish their title to said property until it was fully paid for, and that, in case of default, said Lockett & Co. might declare the whole amount remaining unpaid then due and payable, and without process of law take possession of said property, remove the same from the premises, and sell the same as under execution for the purpose of satisfying their demands. It further provided that the board of water commissioners should keep said property insured, with the loss, if any, payable to Lockett & Co. as its interests might appear. Said contract was registered as a chattel mortgage in the office of the county clerk of Johnson county on January 15, 1925.

"Appellant instituted this suit on the 14th day of February, 1925. On March 24, 1925, the court granted a temporary injunction restraining appellees from proceeding further in performance of said contract, but, appellant having failed to make the bond required, the order granting said injunction was set aside and vacated.

"Said original contract for the purchase of said machinery was modified by a supplemental contract in writing, dated May 15, 1925. By the terms of said supplemental contract the board of water commissioners agreed, in substance, that all funds, including bonds or claims or bills receivable theretofore accumulated and the net receipts and revenues thereafter to be derived by said water department by operation of its waterworks system, over and above the necessary expense of operating the same, should be and were set aside, and constituted a fund to be used solely for paying off and discharging its

⊚�longdash⟩For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

obligations, under its said original contract, and the notes to be executed thereunder until said obligations were fully satisfied, and declared that such funds and net receipts and revenues were there pledged to secure its said obligations. In consideration thereof said Lockett & Co. agreed to relinquish and waive all claims or demands they had or might have ever asserted against any other revenues or income from any source whatsoever of the city of Cleburne other than the revenues from the waterworks system as aforesaid. It was expressly provided in said supplemental contract that nothing therein should be taken as changing or modifying the original contract, except as therein expressly stated, nor as a waiver on the part of Lockett & Co. of any lien, right, or remedy under said contract other than such as were expressly waived as above stated.

"There was a trial to the court on May 31, 1925. The evidence shows that the city of Cleburne was operated under a home rule charter, adopted September 17, 1914; that said city had shortly theretofore acquired a waterworks plant; that it paid for the same with the proceeds of a bond issue in the sum of $128,000; that it, at the same time, improved and equipped said plant with the proceeds of a bond issue in the further sum of $50,000; and that all said bonds were outstanding at the time of trial."

The trial court rendered final judgment denying Griffith relief, and on appeal this judgment was reversed.

Article 1175, subd. 11, R. C. S. 1925, applicable to cities which have adopted their charters under the Home Rule Amendment of our Constitution (article 11, § 5 [see Acts 1911, p. 284]), is as follows:

"Cities adopting the charter or amendment hereunder shall have full power of local self-government, and among the other powers that may be exercised by any such city the following are hereby enumerated for greater certainty: * * *

"11. To have the exclusive right to own, erect, maintain and operate waterworks and waterworks system for the use of any city, and its inhabitants, to regulate the same and have power to prescribe rates for water furnished and to acquire by purchase, donation or otherwise, suitable grounds within and without the limits of the city on which to erect any such works and the necessary right of way, and to do and perform whatsoever may be necessary to operate and maintain the said waterworks or waterworks system and to compel the owners of all property and the agents of such owners or persons in control thereof to pay all charges for water furnished upon such property and to fix a lien upon such property for any such charges. To provide that all receipts from the waterworks may, in its discretion, constitute a separate or sacred fund which shall be used for no other purpose than the extension, improvement, operation, maintenance, repair and betterment of said waterworks system or waterworks supply, and to provide for the pledging of any such receipts and revenues for the purpose of making any of such improvements, and the payment of the principal and providing an interest and sinking fund for any bonds issued therefor under such regulations as may be provided by the charter adopted by such city."

[1, 2] This section expressly gave to the city of Cleburne the right to own, operate, and maintain its waterworks system, to engage in the business of furnishing water to its inhabitants, for compensation to be paid to it by those to whom water was furnished, and to pledge the receipts and revenues derived from the operation of its waterworks system for the purpose of extending, improving, operating, maintaining, and repairing its waterworks plant. The contract here involved is one which the city was by statute expressly authorized to make. This agreement does not contemplate the levy, assessment, and collection of taxes in payment for the purchase of the machinery, and does not purport to create an obligation of the city to pay for said machinery from revenues from taxation. The city has not issued, nor does it contemplate the issuance of, warrants on its revenues derived or to be derived from taxation in payment of the machinery purchased under the terms of the agreement. The contract could create no obligation to pay for the machinery other than by the application of the pledged net income of its waterworks system, and is therefore not inhibited by article 11, §§ 5 and 7, of our Constitution. McNeal v. City of Waco, 89 Tex. 83, 33 S. W. 322; City of Laredo v. Frishmuth (Tex. Civ. App.) 196 S. W. 190; State v. Neosho, 203 Mo. 40, 101 S. W. 99.

The contract, in order to be valid and binding on the city of Cleburne, must have been executed by an agency of the municipality duly and legally authorized by its charter to execute it. The question here to be determined is whether the board of water commissioners is such agency.

[3] The charter provides that the management of the affairs of the city of Cleburne shall be and is "delegated and lodged in the city council, the elected and appointed officers of said city, board of water commissioners, board of school trustees, and the corporation court, with such functions and powers as" are conferred therein; that the board of water commissioners shall be composed of five persons elected by the qualified voters of the city; and that said board shall, by appointment fill the vacancies which may occur thereon until the next succeeding election. It provides for the removal from office of the members of said board on charges preferred on trial before the city council as a court. It also provides that it shall be the duty of the "board of water commissioners to take charge of, manage, maintain, operate, improve, extend, and enlarge the system of waterworks," and that said board shall have exclusive control and disposition of all funds collected in the man-

agement and operation of the waterworks plant.

Sections 83, 84, and 87 of said charter are as follows:

"Sec. 83. All funds collected by, or on behalf of, the water department shall forthwith be delivered by the person collecting the same to the superintendent, and he shall daily deposit all funds coming into his hands with the treasurer of the city of Cleburne, as the funds of the city, and the same shall be credited by the treasurer to the 'waterworks fund,' and shall not be drawn upon or expended except as herein provided. All payments of money by said water department shall be made by the board of water commissioners by draft or check on said fund which shall, in addition to the other formalities, state accurately and specifically the purpose for which it is given, and shall be signed by the superintendent and attested by the president and the secretary of the board; and said fund shall not be drawn upon in any other manner and said officers shall not sign or attest any warrant, draft or check unless they personally know the same to be drawn for the purpose specified. After the payment of the expenses of maintenance and extensions of the water system, the board of water commissioners shall annually set aside the surplus until $10,000 has been accumulated in a fund known as the 'waterworks sacred fund,' which shall not be used except in the case of emergencies but which may be invested under the terms of this charter. When said fund amounts to $10,000, then the board of water commissioners, for the purpose of reducing taxes, may appropriate said surplus, after the payment of all expenses of maintenance and extension, to the payment of interest on bonds of the city and to sinking funds. Receipts and funds of the water department shall not be used or applied to any purpose except such as is authorized by this charter.

"Sec. 84. The board of water commissioners shall have power to borrow money for the current expenses of the water system in any sum or sums as the board may deem proper, not to exceed $10,000 in the aggregate, and to issue the board's negotiable note or notes for same, to be signed by the president and attested by the secretary. Such loans shall not bear a higher rate of interest than eight per cent. per annum or run longer than the current year and shall not be sold or negotiated for less than par."

"Sec. 87. Provided, however, that in the event the board of water commissioners fails or refuses to perform its duties, or in the case of emergencies or public necessity, or at the special instance and request of the board of water commissioners, the city council shall have the power during the existence of such condition to provide the city with water, or to cause the same to be provided, and for this purpose may make, regulate and establish public wells, pumps, cisterns, hydrants, reservoirs and standpipes in the city or in the streets, or public places, or may appropriate money for said purposes, or at such other places as the city council may deem proper, either within or beyond the city limits, and may have full control of same, and the city council may establish, maintain, and regulate a waterworks department and provide the city with water, or with sewers or sewer systems, and may appoint officers, agents, and employees for the maintenance and operation thereof, and vest and clothe them with such power and authority as the discretion of the council may or shall deem proper, and in said events as above the city council shall have the right to own, erect, maintain, and operate waterworks and a waterworks system for the use of the city and its inhabitants, to regulate the same, and to have power to prescribe rates for water furnished during such time, and to acquire by purchase, donation, condemnation, lease or otherwise, suitable grounds and necessary territory and the necessary right of way, and to do and perform whatsoever may be necessary to operate and maintain the said waterworks, sewer or sewer systems, and to compel the owners of all property, the agents of such owners, or persons in control thereof, to pay all charges for water furnished upon and to such property, and to fix a lien upon the same for any and all such charges, to provide that all receipts from said waterworks may, in the discretion of the council, constitute a separate and sacred fund which shall be used for no other purpose than the extension, improvement, maintenance, repair, and betterment of said waterworks or waterworks system, sewer or sewer system, and for the water supply, and to provide for the pledging of any and all receipts and revenues for the purpose hereinbefore mentioned, and for the payment of the principal and interest, and to provide for the interest and sinking fund for any and all bonds issued therefor under such regulations as it may provide; provided, that on the termination of the condition which shall authorize the council to take charge of the waterworks under this section, the same shall at once be restored to the board of water commissioners; and provided, that the city of Cleburne, which now owns its waterworks system and plant, shall not lease or sell the same without first submitting the question of such proposed lease or sale to a vote of the qualified voters who are property tax payers of said city, at general or special election called for that purpose, and then not unless a majority of those voting at said election shall vote in favor thereof. Before submitting such question to a vote of the people as aforesaid, the proposed contract for lease or sale shall be filed with the secretary for at least twenty days prior to the date of election, and such ordinance or contract shall be published in some newspaper in the city at least ten days before said election."

[5, 6] We think the city of Cleburne has in its charter clearly designated the board of water commissioners as the agency through which it should act in contracting for the purchase of this machinery. Not only was the duty to purchase imposed upon the board, but the board was also given the sole management, control, and disposition of the income derived from the operation of the plant, which the city had the right to pledge for the payment of the machinery. At the time this contract was executed, the board of water commissioners was in control of the waterworks system. The city council was not in temporary control under the provisions contained in section 87 of the charter above quoted, and was not

authorized to execute for and in behalf of the city any contract for the maintenance of the waterworks system. The provisions of section 87 conferring power on the city council while in temporary control of the system should not be construed as limiting the powers of the board of water commissioners. Nor should the fact that the board was by the terms of the charter authorized to borrow money for current expenses in operating the plant be construed as a denial of the right to purchase machinery necessary for the maintenance of the system.

We recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. Judgment of the Court of Civil Appeals reversed, and judgment of the district court affirmed, as recommended by the Commission of Appeals.