# JULY, 1931

## CITY OF FORT WORTH V. ROBERT LEE BOBBITT, ATTORNEY GENERAL.

No. 5690. Decided March 18, 1931.
Motion for rehearing overruled July 22, 1931.
36 S. W., 2d Series, 470; 41 S. W., 2d Series, 228.)

*R. E. Rouer*, City Attorney, and *George C. Kemble*, both of Fort Worth, and *John D. McCall*, of Dallas, for relator.

It is the contention of relators that the provisions of article XI, sections 5 and 7, requiring cities to make adequate provision when creating debts, do not impose limitations as to the amount or limit of debt a city can incur. As explained by Judge Denman, in the Terrell case, post, those provisions are for the protection of creditors to assure the adequacy of the provision made to pay the indebtedness. Constitution of Texas, article XI, sections 4, 5 and 7; Harris' Annotated Constitution of Texas, note under article VIII, section 9; Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593; Constitution of Texas, art. III, sec. 52; Hunt v. Atkinson (Com. App.), 12 S. W. (2d) 142; McCutcheson v. Wozencraft, 294 S. W., 1105; City of Houston v. City of Magnolia Park (Com. App.), 276 S. W. 685.

The provisions of said law are not in conflict with those sections of the Constitution of Texas which provide that no debt shall be created by or incurred by a city unless provision is made for the levying, assessment and collection of a tax to pay the principal and interest, for the good and sufficient reason that said law does not authorize or permit the incurring of a "debt" by the city. Constitution, art. XI, secs. 5, 7; McNeil v. City of Waco, 89 Texas, 83, 33 S. W., 322; chapter 43, Acts of Fourth Called Session of 41st Legislature; Sowell v. Griffith (Com. App.), 294 S. W., 521; Laredo v. Frishmuth (Civ. App.), 196 S. W., 190; Southern Texas Public Service Co. v. Jahn (Civ. App.), 7 S. W. (2d) 942; City of Aransas Pass v. Keeling, 112 Texas, 349, 247 S. W., 818; Wallace v. Commissioners' Court of Madison County, 118 Texas, 279, 15 S. W. (2d) 535; Corsicana v. Mills (Civ. App.), 235 S. W., 220; Masterson v. City of Beaumont (Civ. App.), 142 S. W., 984; Fairbanks-Morse Co. v. Texas Power & Light Co. (Circuit Court of Appeals), 32 Fed. (2d) 693.

The distinction between a debt and a contingent liability is concisely stated by the Supreme Court of the United States in the case of City of Walla Walla v. Walla Walla Water Company, 172 U. S., 1, 19 S. Ct., 77, 43 L. Ed., 341.

A burden imposed on a city by law is not such a burden as comes under the technical classification "indebtedness," for which provision must be made by the levying of a tax. City of Dallas v. Miller et al. (Civ. App.), 27 S. W., 498, 500; Menar, Mayor, v. Sanders (Court of Appeals of Ky.), 183 S. W., 949; Martin v. Territory (Sup. Ct. of Okla.), 48 Pac., 106; Smartt v. Board of County Commissioners (Sup. Ct. of Oka.), 169 Pac.,

1101; Anderson, Sheriff, v. Board (Sup. Ct. of Okla.), 273 Pac., 222; McCormick, County Attorney, v. Bentley, Mayor, et al. (Sup. Ct. of Kansas), 157 Pac., 1197; Lewis v. Wilber (Calif. Sup. Ct.), 33 Pac., 1128; Ranch v. Chapman (Sup. Ct. of Washington), 48 Pac., 253, 36 L. R. A., 407, 58 Am. St. Reports, 52; Grant v. Lake County, 17 Ore., 453; 21 Pac., 477; Corpus Juris, vol. 44, p. 1138, sec. 4073; City of Texarkana v. Telephone Company, 106 S. W., 915 (Ct. of Civ. App.); Fort Worth Gas Company v. Latex Oil & Gas Company (Ct. of Civ. App.), 299 S. W., 705, 710; City of Aransas Pass v. Keeling (Texas), 247 S. W., 818, 820; People by Keyes, Attorney General, ex rel. Setters et al. v. Lee et al., 243 Pac., 583.

*James V. Allred,* Attorney General, and *Scott Gaines,* Assistant Attorney General, for respondent.

Since the issuance of municipal bonds required the levy and collection of taxes to pay the interest thereon and to provide a sinking fund sufficient to redeem them at maturity, it necessarily follows that the bonding capacity of a municipality must be co-extensive with its taxing power. The purpose of the constitutional provisions is to protect the citizenship from exorbitant taxation and excessive debt. Mulkey v. City of Kaufman, 286 S. W., 620; City of Belton v. Harris Trust & Savings Bank, 273 S. W., 914, 283 S. W., 164; City of Rockdale v. Cureton, 111 Texas, 136, 229 S. W., 852; Meyers v. Walker, 266 S. W., 314, 266 S. W., 499; City of Athens v. Moody, 280 S. W., 514; M., K. & T. v. City of Whitesboro, 287 S. W., 904.

The constitutional requirement that provision be made by the levy and collection of an annual tax sufficient to pay the interest and at least two per cent of the principal of the indebtedness, and the total amount of tax rate that may be levied is limited, all of which operate as a limitation upon the amount of the indebtedness that may be incurred by a municipality in Texas. In our Constitution there is not only a requirement that provision shall be made for the levying of a tax for the payment of the principal and interest of the indebtedness, but the amount of the tax which may be levied is also limited. Dillon Mun. Corp. (5th Ed.), sec. 212; Citizens State Bank v. Terrell, 78 Texas, 450; Columbus v. Woonsocket Inst. for Savings, 114 Fed., 165; Millsap v. Terrell, 60 Fed., 193; Terrell v. Dessaint, 71 Texas, 770; Wade v. Travis County, 174 U. S., 499; Francis v. Howard, 13 U. S., 126, 54 Fed., 487; Nolan County v. State, 83 Texas, 182; Mitchell County v. City National Bank, 91 Texas, 361; Peck v. City of Hempstead, 27 Texas Civ. App., 84, 65 S. W., 653.

The term "debt" has been well defined, and the definition has been upheld in a long line of decisions in this state. In McNeal v. City of Waco, 89 Texas, 88, 33 S. W., 322; Howard v. Smith, 91 Texas, 8, 38 S. W., 16; City of Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593; City of Cleburne v. Mfg. Co., 127 S. W., 1073; "debt" means any pecuniary obligation imposed by contract, except such as is at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the control of the corporation.

Contracts for local improvements, the cost of which is to be borne *wholly* by the property benefited form no part of the indebtedness of the municipality within the meaning of the constitutional provisions. *However, where improvement bonds are not made payable wholly out of a special fund derived from the assessment on the property benefited, but the faith and credit of the city are pledged for their payment, they become a personal obligation of the city.* German National Bank v. Covington, 164 Ky., 292, 175 S. W., 330; Schuster v. City Council of Oakdale, 180 Ky., 760, 203 S. W., 715; Quill v. Indianapolis, 124 Ind., 292, 23 N. E., 788, 7 L. R. A., 681.

MR. JUDGE CRITZ delivered the opinion of the Commission of Appeals, Section A.

This is an original mandamus proceeding filed by the city of Ft. Worth, Texas, a city duly and legally incorporated under and by virtue of the laws of the state of Texas, and operating as a home rule city, with a population of more than 5,000 inhabitants, and by certain officers of said city against the attorney general of this state to compel the approval of certain "special improvement bonds or certificates" issued by the city of Ft. Worth under the provisions of chapter 43, page 82, General Laws, 4th Called Session, 41st Legislature, 1930.

The attorney general has declined to approve such bonds and contends that the act attempting to authorize the issuance of same is unconstitutional and void for several reasons. We deem it only necessary to discuss one of such reasons.

The attorney general contends that the act in question is in contravention of section 56 of article 3 of our State Constitution in that same seeks to regulate the affairs of a city and seeks to change the charter of an incorporated city by a local law.

The caption of the act in question reads as follows:

"An Act providing that certain cities having the population requirements set forth herein may acquire and own special

assessment certificates issued in connection with street improvements, that such cities may pledge and impound said certificates as the basis for the issuance of special improvement bonds subject to the limitations and provisions of this Act; providing for use of funds from the sale of such bonds; providing that such bonds shall not be reckoned in determining charter, Constitutional or Statutory bond limitations and shall not constitute indebtedness of the city contemplated under certain provisions of the Constitution; prescribing Statutory duties imposed on such cities when such bonds are issued; providing for the examination and approval of such bonds by the Attorney General, and for their registration by the Comptroller; and declaring an emergency."

Section 1 of the act in question reads as follows:

"Section 1. Cities in the State of Texas having not less than 106,000 inhabitants and not more than 110,000 inhabitants, according to the United States Census of 1920, may proceed in accordance with the provisions hereof, independently of and without reference to any other applicable law or charter provision, present or future, which, however, shall remain in force as *alternative* (alternative) methods. The terms 'city,' 'such city,' 'said city,' and the plurals thereof, shall mean a city or cities included under the provisions of this Act."

Section 56 of article 3 of our State Constitution, so far as applicable to this case reads as follows:

"Sec. 56. The Legislature shall not, except as otherwise provided in this Constitution, pass any local or special law, authorizing:
\* \* \*

"Regulating the affairs of counties, cities, towns, wards, or school districts.
\* \* \*

"Incorporating cities, towns or villages or changing their charters."

■ It will be noted that section 1 of the act confined its application absolutely to cities which according to the United States Census of 1920, contain not less than 106,000 and not more than 110,000 inhabitants. An examination of the census referred to discloses that the city of Ft. Worth, Texas, is absolutely the only city in the state of Texas that has a population coming within the provisions of this act. Furthermore, the act is so construed that it is absolutely impossible for any other city in the state to ever be included within the terms or under the provisions of the act. It is therefore our opinion that this

act is confined in its application to the city of Ft. Worth only, just as clearly, and just as effectively, as if the stipulation with reference to population had been omitted and the name "Ft. Worth" written therein in its stead. The constitution in plain and simple terms prohibits the enactment of any local or special law regulating the affairs of cities, or changing their charters. It cannot be denied that this law does have reference to regulating the affairs of cities. If it is a local or special law it is therefore unconstitutional and void.

We presume that no one would contend, if the name "Ft. Worth" had been inserted in the law in place of the stipulation with reference to population that the act would be constitutional. If we should hold this law to be constitutional when it describes and confines its application absolutely to one city we would in effect be holding the constitutional provision under discussion idle and a vain thing, and can be evaded by a subterfuge. We therefore hold that the act in question is unconstitutional and void. Lewis' Sutherland Stat. Construction (2d Ed.), p. 397 et seq. and notes. Parker-Washington Co. v. Kansas City, 73 Kan., 722, 85 Pac., 781, 782; Hibbard v. State, 65 Ohio, 574, 64 N. E., 109; Gray v. Taylor, 227 U. S., 51, 33 S. Ct., 199, 57 L. Ed., 413; 36 C. J., 96.

We quote the following from Sutherland, supra:

"A classification based upon existing or past conditions or facts, and which would exclude the persons, places, things or objects thereafter coming into the same situation or condition, is special and void. Thus a classification of cities or counties based upon existing population or upon the population shown by specified census is of this character."

"The number of persons affected by a law does not control or determine the question of its validity; it is enough that the law relates to a subject of a general nature, and is general and uniform in its operation upon every person who is brought within the relation and circumstances provided for by it. A class of cities or counties, based upon population, may be valid, though it embraces but one city or county, if others may come into the class on attaining the specified population."

"An Act which designates a particular city or county by name, or by a description so qualified that a particular city or county is plainly intended, and that no other can reasonably be expected to have the distinguishing characteristics, and whose operation is limited to such city or country, is held to be local or special."

"An act applicable to counties having a population of from

35,190 to 35,200 was held evasive and special"—citing Hixon v. Burson, 54 Ohio, 470, 43 N. E., 1000; Owen County Com'rs. v. Shangler, 159 Ind., 575, 65 N. E., 743.

In Parker-Washington Co. v. Kansas City, supra, the Supreme Court of Kansas, in construing the provisions of the constitution of that state and in defining a "special act" and "laws of a general nature" said:

"Section 1 of article 12 of the Constitution provides that 'the Legislature shall pass no special act conferring corporate powers', and section 17 of article 2 that 'all laws of a general nature shall have a uniform operation throughout the state.' Whether the act in question is to be regarded as special, and whether its operation is uniform throughout the state depends upon whether population affords a fair basis for the classification of cities with reference to the matters to which it relates, and whether the result it accomplishes is in fact a real classification upon that basis, and not a designation of a single city to which alone it shall apply, under the guise of such classification."

In Hibbard v. State, supra, a law of Ohio which provided for pensioning teachers in the public schools of a certain city in that state was attacked on the ground that it violated a provision of the Constitution of Ohio providing that all laws of a general nature should have a uniform application throughout the state. The law in question was so drawn that it was general in form, but only applied at the time it went into effect to the city of Toledo, and could never after a certain date apply to any other city. The court condemned the law in the following language:

"It is argued that this might apply to any city that came into the class at any time thereafter; that the language of the act might be so construed as to include such cities; and that the boards in such cities and the teachers might take action after they came into the class designated. But we do not so construe this act. It is contrary to the plain language of the act itself, which provides that such action shall be taken within a certain time after the act goes into effect. The language of the act itself and its title seem to indicate that it was intended by the Legislature that it should apply only to the City of Toledo. This act not only did not apply to any city in the state but Toledo at the time of its passage and taking effect, but it could never apply in the future to any other city. The subject-matter of the act is one of a general nature, and in which all the people of the state are interested. It comes within

both the language and the spirit of this provision of the constitution."

In Gray v. Taylor, supra, the Supreme Court of the United States defined a local law as: "The phrase 'local law' means primarily, a law that in effect, if not in form, is directed only to a specific spot." 36 C. J., 690, supra, gives practically the same definition.

Of course, we do not mean to hold that an act general in its nature and terms would be in contravention of the above constitutional provisions, merely because at the time of its passage it only affects one city; in fact we hold to the contrary. We think, however, that an act which is so drawn that by its plain and explicit provisions it is made to apply to one city only in the state, and can never in any contingency apply to any other city is just as repugnant to the constitutional provisions under discussion as though the name of the city to which the act does apply had been written into the act in the first instance. In other words, we think that a city can be designated by description just as effectively as it can be named.

To state our views in another form, we hold that a law that has uniform application throughout the state to cities of a certain class, as to population, or other legitimate classification, is not repugnant to the constitutional provision under discussion even though there is only one city in the state of that class, but when the law is so drawn that it applies only to one city, and can never apply to any but this one city in any possible event, the law is unconstitutional and void, because such a law is not based on classification but on isolation. Cooley's Constitutional Limitations, 8th Ed. Notes, vol. 1, pp. 262-3.

Since the act is unconstitutional for the reasons stated, there is no lawful authority for the issuance of the bonds which the city of Ft. Worth here seeks to have the attorney general approve. The mandamus should therefore be refused and we so recommend.

The opinion of the Commission of Appeals is adopted, and mandamus refused.

C. M. CURETON, Chief Justice.

### ON MOTION FOR REHEARING.

As shown by our original opinion, 36 S. W. (2d) 470, this is an original mandamus proceeding filed by the city of Ft. Worth, a city duly and legally incorporated under and by virtue of the Constitution and laws of this state, with a population of more than 5,000, and operating under a special charter

as a home rule city, against the attorney general of Texas. As originally filed the petition sought a mandamus to compel the attorney general to approve certain "special improvement bonds or certificates," issued by the city under the provisions of chapter 43, page 82, General Laws, 4th Called Session, 41st Legislature, 1930. The attorney general declined to approve such bonds, contending that the act above mentioned was unconstitutional and void in several particulars.

In our original opinion we sustained the contentions of the attorney general to the effect that the above act was unconstitutional and void because in contravention of section 56 of article 3 of our State Constitution, in that said original act sought to regulate the affairs of a city by a local law. This holding settled the case in its then status, and we did not pass on the other constitutional objections made by the attorney general.

After the original opinion herein was adopted by the Supreme Court, and after the judgment therein recommended was entered, and prior to the filing of the instant motion for rehearing, the Legislature of Texas, convened in its 42nd Regular Session, passed a new law which is H. B. No. 882, and which became effective March 27, 1931. (Sp. Laws, 1931, c. 74). The provisions of the new law are substantially identical with those of the old law in so far as the issuance of "special improvement bonds or certificates are concerned." The new law, however, is made applicable to "Cities in the state of Texas, having a population of more than 100,000 inhabitants according to the last preceding United States census."

It is admitted that Ft. Worth has a population of more than 100,000 as shown by the 1930 census.

■ From the statement we have made it is evident that the new law is not subject to the objection that it is a local or special law in violation of section 56, of article 3 of our State Constitution, as was the old law.

Also the new law contains the following validating provision:

"SECTION 9. All proceedings heretofore had by the City acting under the provisions of Chapter 43, passed by the Fourth Called Seession of the Forty-first Legislature, are hereby expressly validated. All ordinances and resolutions passed by the governing boards of said cities in reference to accepting the powers and assuming the duties permitted and prescribed under said law, and all resolutions and ordinances pledging and impounding special assessment certificates thereunder, author-

izing the issuance of special improvement bonds and assuming the statutory duties imposed under said law, and all actions of said city officials in executing special improvement bonds thereunder and in performing all other acts under said law, are hereby legalized and validated."

For the purpose of this opinion we shall assume that the above validating provision has effect to validate the bonds issued under the old law, if such bonds would be valid had they been issued under the new law.

After the passage of the new law, the attorney general again refused to approve the bonds in question here, contending that the new law is unconstitutional and void because in contravention of sections 5 and 7 of article XI of our State Constitution. This same objection was originally made by the attorney general while approval was sought under the old law, but was not passed on by us for the reason that the matter we did pass on settled the cause as it then stood.

■ The matter to be first considered is one of procedure. The Supreme Court granted permission to file petition for mandamus under the old law. The city is now seeking relief under the new law by way of a motion for rehearing. Ordinarily under such circumstances the commission would be inclined to the view that a new petition for mandamus and a new permission to file should be required; but in as much as the same constitutional objections to the new law were involved while the application was pending under the old law, and in as much as the same relief is sought under the new law that was sought under the old law, we shall proceed to determine the validity of the new law.

As above stated, the attorney general refuses to approve the bonds in question, under the new law, and contends that the new law is unconstitutional and void as was the old law, because in violation of sections 5 and 7 of article XI of our State Constitution. These sections read as follows:

"Sec. 5. Cities having more than five thousand (5000) inhabitants may, by a majority vote of the qualified voters of said city, at an election held for that purpose, adopt or amend their charters, subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State; said cities may levy, assess and collect such taxes as may be authorized by law or by their charters; but no tax for any purpose shall

ever be lawful for any one year, which shall exceed two and one-half per cent of the taxable property of such city, and no debt shall ever be created by any city, unless at the same time provision be made to assess and collect annually a sufficient sum to pay the interest thereon and creating a sinking fund of at least two per cent thereon; and providing further, that no city charter shall be altered, amended or repealed oftener than every two years."

"Sec. 7. All counties and cities bordering on the coast of the Gulf of Mexico are hereby authorized upon a vote of two thirds of the taxpayers therein (to be ascertained as may be provided by law) to levy and collect such tax for construction of sea walls, breakwaters, or sanitary purposes, as may be authorized by law, and may create a debt for such works and issue bonds in evidence thereof. But no debt for any purpose shall ever be incurred in any manner by any city or county unless provision is made, at the time of creating the same, for levying and collecting a sufficient tax to pay the interest thereon and provide at least two per cent as a sinking fund; and the condemnation of the right of way for the erection of such works shall be fully provided for."

A reading of the entire act under investigation discloses the following:

(a) By the provisions of section 2, the city, when it desires to improve its streets in such a way that a part of the costs shall be paid by the owners of benefited property, and in such a way that assessment certificate or mechanic lien agreements are authorized or required, is given the right to acquire such certificates and mechanic liens. The city is then given the right to impound such certificates and liens in the hands of the city treasurer or a trustee, and based upon such impounded certificates or liens the city may issue "special improvement bonds or certificates" in an amount not exceeding 90 per cent of the aggregate amount of the certificates or liens impounded, such "special improvement bonds or certificates" to mature serially or otherwise within fifteen years from their date. This section contains other provisions not necessary to mention here.

(b) By the provisions of section 3 of the act, the city is given the right to use any funds of the city which may lawfully be devoted to the purpose in acquiring the certificates and liens in question, and it is provided that the proceeds from the sale of the special improvement bonds may be used to reimburse the city for the funds used in purchasing the certificates

and liens, and the city is authorized to use the proceeds of the sale of such bonds in acquiring the certificates and liens in the first instance.

(c) By the provisions of section 4 of the act it is stipulated that the improvement bonds issued under the provisions of the act shall never be reckoned in determining charter, constitutional, or statutory limitations imposed upon such city restricting its power to issue bonds for any purpose. It is also provided in this section that the issuance of such bonds shall not constitute the incurring or creating of any indebtedness as contemplated by sections 5 and 7 of article XI of the Constitution of Texas. This section contains other provisions not necessary to mention here.

(d) By the provisions of section 5 of the act certain duties are imposed upon the city. We deem it expedient to copy in full subdivisions (a) and (b) of such section. These subdivisions read as follows:

"(a) In event there shall not be funds on hand, realized from the collection of said assessment certificates and interest thereon, sufficient to pay the principal and/or interest of said special improvement bonds, or any of them, as and when the principal and/or interest of said special improvement bonds matures and accrues, it shall then be the duty of such city to deposit in said pledged or impounded fund an amount sufficient to make good the deficit, said deposit to be made out of any money then under control of the city, which may lawfully be used at that time for said purpose; and

"(b) In event such city does not in such eventuality have money on hand or under its control available for said purpose, it shall then be the duty of such city at the time of the occurrence of the deficit to make provision for obtaining the money to make good the deficit. It shall be lawful for the city to be reimbursed to the extent of any such moneys which it may have been compelled to advance under the provisions of this section. Reimbursement may be made out of the revenues from the pledged or impounded assessment certificates, provided that no reimbursement shall ever be made unless and until moneys are on hand in the pledged or impounded fund sufficient to pay the next twelve months' principal and interest maturing on said bonds."

(e) Section 6 of the act provides the way and manner in which the bonds and interest coupons shall be signed and registered by the various city officers.

(f) Section 7 provides for the approval of the bonds by

the attorney general, and their registration by the comptroller.

The balance of the act relates to matters not germane to this portion of the opinion.

■ We think a careful reading of the above act and especially subdivisions (a) and (b) of section 5, above quoted, will disclose that it is in direct conflict with the constitutional provisions above quoted, in that it creates a debt against the city which may run for fifteen years without, at the time of the creation thereof, making provision to assess and collect annually a sufficient sum in taxes to pay such bonds at maturity.

By the plain and simple provisions of subdivision (a), supra, it is made the absolute duty and obligation of the city to deposit in the pledged fund any deficit that may exist in any future year when the bonds or any interest payment may mature; and, by the plain and simple provisions of subdivision (b), supra, it is made the absolute duty and obligation of the city, in the event it does not have the money on hand to meet the deficit, to make provisions for obtaining the money. Certainly the effect of these provisions is to have the city absolutely guarantee the payment of these bonds, and make them a general debt against the city. The statutory provisions above quoted are just as effective to bind the city to pay these bonds, in the event the impounded fund is insufficient, or for any reason fails, as if the guaranty were directly written into the statute and into the bonds. We think the effect is therefore to create a debt against the city within the meaning of sections 5 and 7 of article XI of our State Constitution. McNeal v. City of Waco, 89 Texas, 83, 33 S. W., 322, 324; City of Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593.

■ In McNeal v. Waco, supra, our Supreme Court, speaking through Judge Denman, defined "debt" as used in the above constitutional provision to mean:

"We conclude that the word 'debt,' as used in the constitutional provisions above quoted, means any pecuniary obligation imposed by contract, except such as were, at the date of the contract, within the lawful and reasonable contemplation of the parties, to be satisfied out of the current revenues for the year, or out of some fund then within the immediate control of the corporation. Corpus Christi v. Woessner, 58 Texas, 465; Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593; Appeal of City of Erie, 91 Pa. St., 398; Prince v. City of Quincy, 105 Ill., 138."

In the City of Terrell v. Dessaint, supra, the facts as shown by the opinion are as follows:

"This suit was brought by appellee as endorsee of a promissory note of which the following is a copy: '$1,000. Two years after date the city of Terrell promises to pay P. H. Layen or order one thousand dollars for value received, with interest at 7 per cent from date. This note is given in payment for material for water-works supplies, and is payable out of the tax of ¼ of one per cent collected annually for general purposes.' It is dated May 13, 1885, and is signed by the mayor and secretary pro tem of the city. At the time of the execution of the note the city had leased or sold its water-works to the Texas Gas and Water Company and the latter had been in possession of the property for a considerable time. The management of the company not being satisfactory, it was agreed that its contract with the city should be rescinded, and that the city should resume the possession and management of the works. As a part of the contract of rescission, the city agreed to purchase of the company certain materials on hand for the extension of the works, and to pay therefor the sum of two thousand dollars. For this sum the city issued warrants or drafts on its treasurer for about five hundred dollars, and executed two promissory notes—one being that in controversy—and the other for five hundred dollars, payable twelve months from date."

The court then proceeds to define the term "debt" as used in the Constitution, and the powers and limitations of a city in regard thereto in the following language:

"But it is contended that the promissory note sued upon in this case is not a debt, within the meaning of the provisions of the Constitution which limit the power of cities to create indebtedness, and of the statutes which regulate the manner in which such debts shall be evidenced and secured. To state appellee's position more specifically—it is claimed that the debt in this case was current expenses, and being chargeable upon the current expense fund, it does not come within the purview of the provisions of the Constitution and the statutes to which we have referred. It is held in the case previously cited (Corpus Christi v. Woesnner), that 'the issue of warrants on current expenses of a city, which do not exceed the current revenue derived from taxation' is not the creation of a debt prohibited by the Constitution. We do not doubt the correctness of that ruling. We freely concede that debts for the ordinary running expenses of a city, payable within a year out of the incoming revenues of the year, and with other indebtedness not clearly in excess of the yearly income for general pur-

poses, can be created by a city. But we think that a debt for current expenses in order to be valid without a compliance with the constitutional and statutory requirements to which we have referred, must run concurrently with the current resources for such purposes, and that such a debt can not be created without such compliance, which matures at such a time as would make it a charge upon the future resources of the city. It may not be easy to define accurately what are the current expenses of a municipality. But we may ask, if a city can create a debt of one thousand five hundred dollars for materials to extend its waterworks, and make it payable, with interest one and two years after date, why may it not create an indebtedness for a larger sum for any public improvement, which it has the power to construct, and make it payable at a longer period? It is clear to us, that if this were permitted, the provisions of our Constitution and statutes, which limit the power and regulate the manner of the creation of municipal indebtedness, would be entirely nugatory.

"It was shown upon the trial that the city had exhausted its powers of creating debts chargeable upon funds to be raised by special taxation when the note sued on was given. It was also shown that at the time, and ever since, the current expenses proper of the city exceeded its resources for general purposes. We state these facts, not because we think their statement necessary to a decision of this cause, but because they serve to illustrate the doctrine we assert. If an indebtedness of this character is to be permitted to be created in this manner, of what avail is the provisions of our fundamental and statutory laws, which are intended to protect our cities against the evils of a bankrupt treasury?"

Certainly the bonds here sought to be issued are debts, or pecuniary obligations of the city within the above definitions.

It is contended by the city that no debt is created against the city because the obligation on the part of the city to make good any deficit in the bond fund is only a contingent one. In this connection it is argued by the city that since only 90 per cent of the paving certificates and liens are issued in bonds, the event of the city having to make good any deficit is very remote. This contention must be overruled. The effect of the law is to obligate the city to provide all funds necessary to pay the bonds, and this obligation is absolute and unqualified when the bonds are delivered and the money received therefor.

It is the settled law of this state that a debt created by a city, in order to be valid without compliance with the constitu-

tional requirements to which we have referred, must run concurrently with the current revenues. City of Terrell v. Dessaint, 71 Texas, 770, 9 S. W., 593.

■ The city contends that under the rule announced in Dallas Electric Company v. City of Dallas, 23 Texas Civ. App., 323, 58 S. W., 153 (Writ Refused), the obligation on the part of the city to make good any deficit which may occur in the fund created by the instant law does not create a debt against the city at the time the bonds are issued, but only amounts to a contract for a future indebtedness to be incurred if there should exist a deficit in the fund during some subsequent year. We cannot sustain this contention.

In Dallas Electric Co. v. City of Dallas, supra, the Court of Civil Appeals had before it a contract between the City and the Electric Company, by the terms of which the Electric Company agreed to furnish the city, for the term of three years, a given number of lights at a stated annual rental not exceeding the amount the city was authorized.to collect and appropriate for such purposes each year, and under which contract, payment was to be made only on the performance of the services provided for. The Court of Civil Appeals, speaking through Judge Rainey, upheld the validity of this contract on the ground that it did not create a debt within the meaning of the constitutional provisions here under consideration, but was merely a contract to create a future indebtedness. This opinion then cites in its support the opinion of the Supreme Court of the United States in the case of City of Walla Walla v. Walla Walla Water Co., 172 U. S., 19, 19 Sup. Ct. Rep., 85; 43 L. Ed., 349. It must be admitted that the distinction drawn in the above case is somewhat technical and rather close, but be this as it may, we have no intention of calling it in question.

Clearly the instant law cannot be sustained by the rule in Dallas Electric Co. v. City of Dallas, supra. The debt created by the instant law is evidenced and created by the bonds, and it undoubtedly comes into complete existence at the instant the bonds are issued and sold. The effect of the law is to make the bonds an absolute and binding obligation against the city, and to put the general credit of the city behind them. It is true that a fund is created out of which the bonds may possibly be paid, and it may be even admitted that the fund will probably pay such bonds, but the effect of the statute is to absolutely bind the city to pay in the event the fund, for any reason, fails. The city receives the full consideration when the contract is made, and the obligation and debt of the city is

then complete. There is nothing to be received by the city in the future to be paid for when received, as in the Dallas Electric Co. case, supra. In such a case it cannot be said that the bonds merely evidence an obligation to create a debt in the future. The debt is already created, and nothing is to be done in the future but provide the funds, and pay it.

■ It seems to be contended by the city that the provisions of section 4 of the act which, in substance, stipulated that the bonds shall not constitute the incurring or creating of an indebtedness against the city within the meaning of sections 5 and 7 of article XI, of our Constitution, render the act free from the criticism that it is in violation of such constitutional provisions. We overrule this contention. It is not within the power of the Legislature to enact a law which, in legal effect, violates the constitutional provisions under discussion, and then avoid the effect of so doing by writing into the law a statement that the law does not do that which, in legal effect, it does do. In other words, the law does actually make the bonds a general debt against the city, and a statement in the law which is absolutely antagonistic to its legal result can have no force.

The city contends that the statute here under consideration, and the bonds here sought to be approved are valid and constitutional under the rule announced in City of Corpus Christi v. Woessner, 58 Texas, 462. We think that case can give no comfort to the relator here. In the Corpus Christi case the warrants were issued in payment of debts of the city, which were legal and valid when incurred, and which debts were payable out of the revenues of the city for the current year, but the city wrongfully diverted part of its current year's funds and left these lawful obligations unpaid. Of course, this court held that the city could be compelled to pay such debt, lawful when created, out of the revenues of subsequent years, and could make a valid contract to do so.

The city contends that under the rule announced in Sowell v. Griffith, 294 S. W., 521, (Texas Com. App.) ; and City of Laredo v. Frishmuth, 196 S. W., 190, (Texas Civ. App.), these bonds should be approved. We think neither of these cases is authority to sustain these bonds or this law.

In Sowell v. Griffith, supra, it is shown that the contract was between the Board of Water Commissioners of the City of Cleburne, Texas, on the one hand, and A. M. Lockett & Company, a private corporation, on the other. The action was to restrain the execution and performance of a contract between such parties. In its final form the contract amounted to an

agreement between the parties by the terms of which Lockett & Company sold to the Board of Water Commissioners certain machinery at an agreed price. The board agreed to pay for this machinery in installments, some of which matured subsequent to the current year. No tax was levied to meet the installments falling due for subsequent years. The board pledged the net receipts of the water plant as security for the debt. Also Lockett & Company retained a lien on the machinery which was registered as chattel mortgage. Under the charter of the city the management of the water plant was placed in the Board of Water Commissioners and both the statute and the charter of the city provided for the pledging of the receipts and revenues of the water works for debts incurred or betterments and extensions. Also the contract in question made no attempt to bind the city except as to the lien on the machinery purchased and the net receipts of the water works. This section of the Commission, speaking through Judge Bishop, upheld the above contract, purely on the theory that it created no obligation or debt on the part of the city which had to be paid out of the revenues derived from taxation, but only an obligation to apply the pledged fund derived from the revenues of the water works. The opinion clearly holds that the contract could not create a debt against the city other than the duty to apply the net income of the water works to the payment thereof.

In the case at bar we have a very different condition from that in Sowell v. Griffith, because here the statute under consideration makes the city the absolute guarantor of the instant bonds. Had the contract in Sowell v. Griffith attempted to bind the city beyond the current year for any sum owing on the contract beyond the amount the net receipts of the water works would pay, such contract would have been invalid without a tax levy as provided by the Constitution. The holding in the Sowell case was correct and meets our approval.

City of Laredo v. Frishmuth, supra, is no authority to sustain these bonds. In that case the City of Laredo issued $75,000 in bonds by a vote of the people. The bonds were secured by a tax levy of one per cent on the $100 valuation of taxable property in the city, and by setting apart the money arising from the sale of certain lots owned by the city, the rents and revenues arising from the city hall and market house, and the fines and forfeitures to be collected by the city. It is further shown that these securities amounted in value to several times the amount of the bonds and that the city did actu-

ally derive such amount therefrom. In such a case the Court of Civil Appeals upheld the contract, and the liability of the city thereon. Certainly the city having bound itself no further than the pledged fund, was legally liable to apply such funds to the purposes it had contracted to apply them to, and having failed to do so was liable for default in payment of the bonds. Also in the Laredo case a tax was levied, which together with the pledged funds, was more than sufficient to pay the bonds.

■ Finally we come to consider whether there is a tax levy to pay these bonds within the meaning of the constitutional provision under consideration. After a careful study of the act itself and the constitutional provisions under investigation, we have reached the conclusion that there is no tax, within the meaning of the constitutional provision under consideration levied to pay these bonds. In the first place the act itself provides for impounding both paving certificates and mechanic lien agreements. In other words, the bonds issued under the statute may, according to its express provisions, be entirely based on mechanic lien agreements which do not represent, in any sense of the word a property tax but merely a private contract lien and obligation.

However, if the law only provided for impounding paving certificates which are only secured by paving assessments and liens created strictly under the paving laws, an assessment of costs against an abutting property owner, which assessment is a tax in a certain sense of the word, would not be a tax within the meaning of sections 5 and 7 of article XI of our State Constitution, because the tax levy made to pay the paving assessment is by its very nature, and as a matter of law, only a tax lien and charge against each particular piece of abutting property and its owner to pay the costs assessed against that particular piece of property. 44 C. J., p. 1131, sec. 4064.

We quote the rule as announced in 44 C. J.:

"Except in some jurisdictions, the fact that a municipality has passed beyond its debt limit does not prevent it from contracting a debt payable expressly out of a special fund. The rule is applicable to a debt payable out of a fund derived from the income and revenue of a light or waterworks plant or other public utility constructed or purchased by the municipality, unless, in addition to the revenue, the property itself is mortgaged to secure payment of the indebtedness. A municipality may, without increasing its indebtedness within the meaning of constitutional limitations, contract an indebtedness payable out of the proceeds of a special assessment, provided, at the

time of the making of the contract, no liability on the part of the city, other than to pay over the assessment when collected, is created.

"Where an assessment to pay for an improvement is made against the municipality for benefits received, the question whether the liability of the city for the amount of such assessment comes within a constitutional debt limitation depends upon whether the assessment is to be paid by general taxation, including taxation of personal property, or whether the assessment is made only upon abutting real property owned by the municipality, the limitation being applicable in the former case, but not in the latter."

We recommend that the mandamus be in all things refused.