

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Mr. Wm. J. Tucker
Executive Secretary
Game, Fish and Oyster Commission
Austin, Texas

Dear Sir:

        Opinion No. O-1804
        Re: Constitutionality of House
            Bill No. 945, Acts 1939,
            46th Legislature, relating
            to trespass on private lands
            for purposes of hunting and
            fishing in certain counties.

        We have for reply your letter of December 21, 1939,
regarding the constitutionality of House Bill No. 945, Acts
1939, 46th Legislature, relating to trespass on private
lands for the purpose of hunting and fishing, and we take
pleasure in answering the same.

        House Bill No. 945 is by its terms applicable only
to "counties having a population of not less than fifteen
thousand, one hundred forty-nine (15,149), and not more
than fifteen thousand, three hundred (15,300) inhabitants,
according to the last preceding federal census." Since this
enactment is framed in terms of a general law, providing
population brackets, our first problem is to determine wheth-
er it is in fact a general or a special or a local law.

        Section 56 of Article III of the Constitution of
Texas reads, in part, as follows:

        "The Legislature shall not, except as other-
wise provided in this Constitution, pass any lo-
cal or special law, authorizing: (Here follows
a number of special subjects).

        "And in all other cases where a general law
can be made applicable, no local or special law
shall be enacted; provided, that nothing herein
contained shall be construed to prohibit the

Mr. Wm. J. Tucker, Page 2

Legislature from passing special laws for the
preservation of the game and fish of this State
in certain localities." (parenthesis and under-
scoring ours)

The following rules are pertinent to the problem
at hand:

"Classification of cities and counties by
population, and legislation applicable to such
classification, has generally been sustained
where a substantial reason appears for such
classification." . . .

"If the classification of cities or coun-
ties is based on population, whether an act is
to be regarded as special, and whether its op-
eration is uniform throughout the State, depends
upon whether population affords a fair basis for
the classification with reference to the matters
to which it relates, and whether the result it
accomplishes is in fact a real classification
upon that basis, and not a designation of a
single city or county to which alone it shall
apply, under the guise of such classification.
Parker-Washington Co. v. Kansas City, 73 Kan.
722, 85 P. 781." Smith v. State, 120 Tex. Cr.
431, 49 S. W. (2d) 739. (underscoring ours)

"The classification adopted must rest in
real or substantial distinctions, which renders
one class, in truth, distinct or different from
another class. . . There must exist a reasona-
ble justification for the classification; that
is, the basis of the classification invoked must
have a direct relation to the purpose of the
law..." I McQuillen on Municipal Corporations,
pp. 498, 499. (underscoring ours)

We are informed that Orange County, Texas, had a
population of 15,149, according to the 1930 federal census;
and that according to such "last preceding federal census"
it is the only county in the State falling within the classi-
fication of counties having not less than 15,149 nor more
than 15,300 inhabitants. We believe that these population
brackets do not afford a fair and reasonable basis for classi-
fication with reference to trespass on uninclosed lands. We

do not believe that this is a real classification, but on the contrary, is the designation of a single county to which alone House Bill No. 945 applies, and an attempt under the guise of classification to create a misdemeanor differing from the general penal laws and one to which the residents of other counties similarly situated are not made amenable. Nor can we bring ourselves to believe that there is a reasonable justification for this distinction or that the basis of classification invoked has a direct relation to the manifest purpose of the law. Consequently, we hold that this is a local or special law, which, if valid, applies only to Orange County, Texas. City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S. W. (2d) 470, 41 S. W. (2d) 228; Bexar County v. Tynan, et al., 97 S. W. (2d) 567, Smith v. State, 120 Tex. Cr. 431, 49 S. W. (2d) 739, I McQuillan, pp. 498, 499. The case of Stevenson, et al v. Wood, et al (Comm. App. 1931) 34 S. W. (2d) 246, is not applicable because this is not a law "for the preservation of game and fish" in this State as will be demonstrated.

Having determined that this is a local or special law which applies by description only to Orange County, Texas, just as effectively as if Orange County had been designated by name, our next problem is to determine whether or not House Bill No. 945 is a law for the preservation of game and fish, within the meaning of Section 56 of Article III of the Constitution of Texas. If it is not a law for the preservation of game and fish, is the subject of the law one about which a general law can be or has been made applicable?

House Bill No. 945 reads, in part, as follows:

"Section 1. In counties having a population of not less than fifteen thousand, one hundred and forty-nine (15,149) and not more than fifteen thousand, three hundred (15,300) inhabitants according to the last preceding Federal Census whoever shall enter upon the inclosed or uninclosed land of another without the consent of the owner, proprietor, or agent in charge thereof, and hunt with firearms or catch any game thereon, or thereon catch or take or attempt to catch or take any fish from any pond, lake, tank, or stream on said land or in any manner depredate upon the same, or take or attempt to take any property therefrom,

shall be guilty of a misdemeanor, and upon conviction thereof, shall be fined any sum not less than Ten Dollars ($10) nor more than Two Hundred Dollars ($200) and by a forfeiture of his hunting license and the right to hunt in the State of Texas for a period of one year from the date of his conviction. By 'inclosed land' is meant such land as is in use for agriculture or grazing purposes or for any other purpose, and inclosed by any structure for fencing, either or wood or iron or combination thereof, or wood and wire, or partly by water or stream, canyon, brush, rock or rocks, bluffs, or island. Proof of ownership or lease or agency may be made by parol testimony; providing however, that this Act shall not apply to inclosed or uninclosed land which is rented or leased for hunting or fishing or camping privileges where the owner, proprietor, or agent in charge or any person for him, by any and every means has received or contracted to receive more than twenty-five (25¢) cents per acre per year or any part of a year for such hunting, fishing, or camping privileges, or where more than Four Dollars ($4) per day per person is charged for such hunting, fishing, or camping privileges, and provided further that this exception shall exist for a period of one year from the date of the receipt of such sum or sums of money.

"Section 2. Any person found upon the inclosed land of another without the owner's consent, shall be subject to arrest by any peace officer, and such arrest may be made without warrant of arrest."

We also call your attention to Article 1377 of the Penal Code of this State, which reads:

"Whoever shall enter upon the inclosed land of another without the consent of the owner, proprietor or agent in charge thereof, and therein hunt with firearms or thereon catch or take or attempt to catch or take any fish from any pond, lake, tank or stream, or in any manner depredate upon the same,

Mr. Wm. J. Tucker, Page 5

shall be guilty of a misdemeanor, and upon
conviction thereof, shall be fined any sum
not less than $10.00 nor more than $200.00
and by a forfeiture of his hunting license
and the right to hunt in the State of Texas
for a period of one year from the date of his
conviction. By 'inclosed lands' is meant such
lands as are in use for agriculture or grazing
purposes or for any other purpose, and inclosed
by any structure for fencing either of wood or
iron or combination thereof, or wood and wire,
or partly by water or stream, canyon, brush,
rock or rocks, bluffs or island. Proof of own-
ership or lease may be made by parol testimony.
Provided, however, that this Act shall not
apply to inclosed lands which are rented or
leased for hunting or fishing or camping priv-
ileges where the owner, proprietor, or agent
in charge or any person for him by any and
every means has received or contracted to re-
ceive more than twenty-five cents per acre per
year or any part of a year for such hunting,
fishing or camping privileges, or where more
than $4.00 per day per person is charged for
such hunting, fishing or camping privileges.
And provided further that this exemption shall
exist for a period of one year from the date
of the receipt of such sum or sums of money.

"Section 2. Any person found upon the in-
closed lands of another without the owner's
consent, shall be subject to arrest by any
peace officer, and such arrest may be made
without warrant of arrest."

The only respect in which these two acts differ is
that (1) House Bill No. 945 applies to uninclosed as well as
inclosed lands, and (2) prohibits the taking of property
from inclosed or uninclosed lands, as well as hunting and
fishing thereon, without the consent of the owner. (These
differences may be found underlined in House Bill No. 945;
in other respects the acts are identical.) Indeed, Section
3, the emergency clause of House Bill No. 945, is frank e-
nough to state that:

"Section 3. The fact that there are now no
provisions in the Penal Code of the State of

Mr. Wm. J. Tucker, Page 6

Texas whereby it is unlawful for any person
to enter upon the uninclosed land of another
without the consent of the owner, proprietor,
or agent in charge thereof, and hunt with
firearms or catch any game thereon, or there-
on catch or take or attempt to catch or take
any fish from any pond, lake, tank, or stream
on said land or in any manner depredate upon
the same, or take or attempt to take any pro-
perty from the inclosed or uninclosed land of
another, creates an emergency and an impera-
tive public necessity that the Constitutional
Rule requiring bills to be read on three
several days in each House be suspended, and
the same is hereby suspended, and this Act
shall take effect and be in force from and
after its passage, and it is so enacted."

Note that it is not the fact that fish and game
conditions are such in Orange County, Texas, that relief
must be had, but that the Penal Code of Texas does not
adequately cover the situation. Moreover, the act was not
passed for "preservation of game and fish" because by its
terms it does not apply if land is rented or leased. It
must have been enacted to aid owners and lessors of unin-
closed lands.

Looking to the legislative history of Article
1377 of the Penal Code, it was first enacted in 1885 (Laws
1885, page 80), and the act did not apply unless the land
was posted by the owner, nor did it apply to inclosures
having 2,000 acres or more. As amended in 1893 (Laws 1893,
page 87), it was provided that no prosecution should take
place except at the instance or upon the written request
of the owner or owners of the land or their agents. The
act was again amended in 1903 and was listed in the General
Laws of that year (Laws 1903, page 159), as an offense a-
gainst property - prohibiting hunting within the inclosure
of another.

Once again the act was amended in 1929 (Acts
1929, Forty-first Legislature, First Called Session, Chap-
ter 100, page 242), and the emergency clause of such en-
actment casts some light upon its purpose. We quote:

"The fact that there is now no law pro-
viding for an adequate protection of the

Mr. Wm. J. Tucker, Page 7

> owners of farms and ranches on the one hand,
> and the hunters on the other, the first from
> unjust depredations by unscrupulous hunters,
> and the second from unfair and exorbitant
> rental charges, creates an emergency and im-
> perative public necessity . . ."

The problem is essentially the same as stated in Tinner vs. Crow, et al ( Comm. App., 1935), 78 S. W. (2d) 588:

> "The statute in question applies to Hill
> County only, and is, therefore, a local or
> special law. If the purpose of the above act
> was to regulate the affairs of the county,
> other than the maintenance of roads, it is
> unconstitutional. On the other hand, if its
> sole purpose was the 'maintenance of the pub-
> lic roads' its enactment was within the power
> of the Legislature."

In Austin Bros. vs. Patton, et al (Comm. App., 1926) 288 S. W. 182, a special road law was held to be in violation of Section 56 of Article III of the Constitution, and not within the exception set forth in Section 99 of Article VIII, because it subtracted from powers conferred on the Commissioners' Court by general law, changed the county financial system as fixed by general law, and created new offices and duties provided for by existing general laws. It was held that none of such things were "incidental or necessary to the maintenance, laying out, opening and construction of roads".

In Kitchens, et al vs. Roberts, County Treasurer (C.C.A., 1930), 24 S. W. (2d) 464, writ refused, a special road law was held to be invalid as an attempt by special or local law to regulate the affairs of the county, because the law fixed the compensation of the county commissioners for services in connection with roads and thus was an attempt to "alter the general laws."

Consequently, we are constrained to hold, and it is the opinion of this department, that House Bill No. 945 is not a law for the preservation of game and fish, but, on the contrary, is an act for the protection of property owners of Orange County, Texas, a special or local law regulating a subject about which a general law can be, and has been made

Mr. Wm. J. Tucker, Page 8

applicable. Therefore, it stands in the teeth of and condemned by Section 56 of Article III of the Constitution of Texas. Altgelt vs. Gutzeit, 109 Tex. 123, 201 S. W. 400; Commissioners' Court of Limestone County, et al vs. Garrett, et al. (Comm. App., 1922) 236 S. W. 970; Anderson, et al vs. Houts, County Judge, et al. (C.C.A., 1922), 240 S. W. 647; Austin Bros. vs. Patton, et al. (Comm. App., 1926) 288 S. W. 182; Kitchens, et al. vs. Roberts, County Treasurer, (C.C.A., 1930) 24 S. W. (2d) 464, writ refused.

We are also of the opinion that House Bill No. 945 is repugnant to Section 19 of Article I of the Constitution of Texas, and Section I of Article XIV of the Federal Constitution, which provide:

"No citizen of this state shall be deprived of life, liberty, property, privileges or immunities, or in any manner disfranchised, except by the due course of the law of the land." Section 19 of Article I, Constitution of Texas.

". . . No state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any state deprive any person of life, liberty or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

In Ex parte Sizemore, 110 Tex. Cr. Rep. 232, 8 S. W. (2d) 134, 136, 59 A. L. R. 430, a special road law had been enacted for Smith County, Texas, allowing convicts only fifty cents per day for laboring on the public roads. The general law provided that convicts in misdemeanor cases should be allowed Three ($3.00) Dollars credit per day on fine costs. The court held that this provision of the special road law was repugnant to the Fourteenth Amendment to the Constitution of the United States and Section 19 of Article I of the Texas Bill of Rights in that it denied due process and equal protection of the laws by requiring a convict in one county to serve a different term than one convicted of the same offense in a similarly situated county.

A like case decided on identical grounds is Ex parte Ferguson, 132 S. W. (2d) 408, decided October 25, 1939, by the Court of Criminal Appeals. In that case the court said:

"Moreover, the classification seems to be based merely on the numbers of people in the various counties, not as to age, sex, or physical infirmaties, or in any other manner which would appear to be a just or reasonable basis for classification. We are not unmindful of the power and authority of the Legislature to classify according to population, but such classification must be based on reasonable grounds - some difference which bears a just and proper relation to the attempted classification and not a mere arbitrary selection. Willoughby on the Constitution, Vol. 2, Sec. 485 (1910 Edition). This being true, we fail to see a reasonable basis for the classification in the instant case. Just why the people in Lamar County and the peoples of other counties falling within the prescribed population brackets should be accorded different treatment to the peoples of other counties of this State is apparent neither from the Act nor from the record before us." (underscoring ours)

Likewise, we fail to see a reasonable basis for making trespass on uninclosed lands in Orange County, Texas, a misdemeanor when the identical acts in neighboring counties or counties similarly situated is not made so and for these reasons and under the authorities set forth above we must hold that House Bill No. 945, is unconstitutional and void.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Walter R. Koch
Walter R. Koch
Assistant

By James D. Smullen
James D. Smullen

APPROVED JAN 18, 1940

Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

JDS:rs


APPROVED
OPINION
COMMITTEE
BY BWB
CHAIRMAN