

# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS 78711

**JOHN L. HILL**
**ATTORNEY GENERAL**

February 12, 1973

Honorable Jim Wallace
Chairman, Intergovernmental
Relations Committee
1114 Texas Avenue Bldg.
Houston, Texas 77002

Opinion No. H- 8

Re: Whether Senate Bill 13
is a general bill and
therefore constitutional
under Article 3, Section
56 of the Texas Consti-
tution.

Dear Senator Wallace:

You have submitted to us a copy of S. B. 13 and have asked our
opinion as to (1) whether the population spread included in the bill is
"such as would create a substantial class to be covered by this legis-
lation?" and (2) whether the bill would be constitutional under Article 3,
Section 56 of the Constitution of Texas "if the Legislature determined
that a reasonable basis existed for the classification."

Your letter concludes with the statement that such classifications
are used in many bills and "these questions will be of great urgency to
our committee and the Legislature as a whole this session." For this
reason our answer to your question will, perhaps, be more compre-
hensive than it would otherwise need to be.

Article 3, Section 56, is not a general prohibition of special or
local laws. Rather it lists some 30 categories in which there shall
be no such law including "all other cases where a general law can be
made applicable, no local or special law shall be enacted."

It provides specifically that there shall be no local or special law
"regulating the affairs of counties, cities, towns, wards or school
districts," "relating to ferries or bridges. . . ." Therefore, your
proposed S. B. 13, dealing as it does with the maintenance of safe bridges
by municipal corporations, would fall within the prohibition and would be
invalid if classified as a local or special law.

Population classifications are not automatically void. However, if the court concludes that the classification is so defined as to limit application of the statute to one city only, then the law will be held a special one and unconstitutional.

This is best exemplified by City of Fort Worth v. Bobbitt, 121 Tex. 14, 36 S. W. 2d 470 (1931). As first enacted, the statute in question applied to cities "having not less than 106,000 inhabitants and not more than 110,000 inhabitants, according to the United States Census of 1920 . . . ." This was held by the Supreme Court to apply only to the City of Fort Worth, the only city in the State which would ever be included within the terms of the Act.

The Legislature then amended the act to make it applicable to cities "having a population of more than 100,000 inhabitants according to the last preceding United States census." Holding this legislation to be a general law and valid the Texas Commission of Appeals in City of Fort Worth v. Bobbitt, 121 Tex. 14, 41 S. W. 2d 228 (1931) said:

> "From the statement we have made, it is evident that the new law is not subject to the objection that it is a local or special law in violation of section 56, of article 3 of our State Constitution, as was the old law." (41 S. W. 2d at 229)

But not for long was it held that, merely because the bracket was open-ended and that more than one city might be included in the future, the classification was constitutional. In Bexar County v. Tyman, 128 Tex. 223, 97 S. W. 2d 467 (1936) the statute applied to counties in which the population was as much as 290,000 and less than 310,000 according to the last preceding federal census. Bexar County was the only one within the classification but the Court held that this alone did not make the statute a special or local law. However, the Court did limit the Legislature's right to classify according to population, stating:

> ". . . Yet in doing so the classification must be based upon a real distinction, and must not be arbitrary or a device to give what is in substance a local or special law the form of a general law. . . ." (97 S. W. 2d at 470)

The court quoted from the decision of the Supreme Court of Arkansas in Leonard v. Road Maintenance Dist. No. 1, 187 Ark. 599, 61 S. W. 2d 70 (1933) as to the factors required to justify a classification:

> "The rule is that a classification cannot be adopted arbitrarily upon a ground which has no foundation in differences of situation or circumstances of the municipalities placed in the different classes. There must be some reasonable relation between the situation of municipalities classified and the purposes and objects to be attained. There must be something . . . which in some reasonable degree accounts for the division into classes."

More recently Justice Steakley, speaking for a unanimous Supreme Court in Railroad Commission of Texas v. Miller, 434 S. W. 2d 670 (Tex. 1968) stated:

> "A classification is reasonable if it is based on a real and substantial difference having relationship to the subject in the particular enactment and operates equally on all within the same class."

In Smith v. Davis, 426 S. W. 2d 827 (Tex. 1968) the court used similar language in defining what is a reasonable classification. It recognized the presumption that a statute is valid and that the Legislature had not acted unreasonably or arbitrarily. It also recognized the possibility of differing opinions as to reasonableness and that such differences would not be sufficient to declare legislation arbitrary or unreasonable. "The wisdom or expedience of the law is the Legislature's prerogative, not ours. . ." (426 S. W. 2d at 831). See also County of Cameron v. Wilson, 160 Tex. 25, 326 S. W. 2d 162 (1959). .

In each of the foregoing cases it is important to note that the court, in determining whether or not a classification was reasonable, discussed the facts concerning the classification.

Examples of some classifications which have been held unreasonable might be helpful.

In Anderson v. Wood, 137 Tex. 201, 252 S.W.2d 1084 (1941), the statute having to do with employment of traffic officers applied to all counties with a population in excess of 125,000 but excluded those not less than 195,000 nor more than 205,000. The only county falling in that category was Tarrant County. The Court was unable to find any reason why Tarrant County should be treated differently and held this to be a special law.

In Rodriguez v. Gonzales, 148 Tex. 537, 227 S.W.2d 791 (1950), the act having to do with collection of delinquent taxes was made applicable only to counties boarding the Rio Grande River; to tracts in excess of 1,000 acres owned by ten or more persons and with title emanating from a grant of the King of Spain. The Court was unable to find any reasonable basis for the classification and held it to be a special law.

San Antonio Retail Grocers v. Lafferty, 156 Tex. 574, 297 S.W.2d 813 (1957) involved the Sales Limitation Act (Article 1111m, Vernon's Texas Penal Code) which was limited in its application to grocers. Reviewing the facts which showed the effect of the act would be to give an advantage to some retailers over others, the Court concluded that there was no reasonable basis for the classification.

Smith v. Decker, 158 Tex. 416, 312 S.W. 632 (1958) involved a bail bond law applicable to any county containing a city of 350,000 or more or to a county having a city of not less than 73,000 nor more than 100,000 population. The Court could see no basis for excluding from the act counties having cities of 100,000 to 349,999 inhabitants and held it to be a special act.

Whether or not a classification is reasonable is a decision which would have to be made, in the first instance, by the Legislature and will be determined, secondly, by a court if and when the constitutionality of the statute is raised. Whether or not a classification is reasonable is a determination based on questions of fact and we do not conceive it to be one within our jurisdiction in advising the Legislature as to the law.

We would suggest that, with particular reference to S. B. 13, a court will see that the only city presently falling within the classification is San Antonio and will ask why San Antonio and any other city which may in the future fall within the classification should be treated differently as to its liability for the maintenance of safe bridges. It will ask questions such as: is there any basis for saying that cities of over 600, 000 are better able to provide safe bridges and that it is more important in those cities that the bridges be safe than in smaller cities? It will ask why this greater responsibility, for some reason, terminates when the city reaches 800, 000 in population? It is our feeling that unless the act recites valid reasons for the classification, there is a strong possibility that a court will hold that the classification in S. B. 13, as presently drawn, is not a reasonable one and that the act is a special law and thus unconstitutional under Article 3, Section 56.

### - S U M M A R Y -

Whether or not a population bracket or spread determining application of a law is sufficiently broad, or whether application of a statute limited to a class determined by population is constitutional under Article 3, Section 56 of the Constitution of Texas depends on the reasonableness of the classification, based upon the existence of substantial differences and the circumstances of the affected classes.

Yours very truly,

JOHN L. HILL
Attorney General of Texas

APPROVED:

JOHN M. BARRON
First Assistant

DAVID M. KENDALL, Chairman
Opinion Committee

-35-